# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re: | ) Chapter 11 |
| 5703 9th, LLC | ) Case No. 23-00131-ELG |
| Debtor. | ) |

## DEBTOR'S OBJECTION
## TO PROOF OF CLAIM NO. 2 FILED BY WCP FUND I, LLC

5703 9th, LLC, the debtor and debtor-in-possession herein (the "Debtor"), hereby objects to Proof of Claim No. 2 (the "Proof of Claim") filed by WCP Fund I, LLC as servicer for U.S. Bank National Association ("WCP"). A true and correct copy of the Proof of Claim with its attached Payoff Statement (other attachments are not included here) is attached as **Exhibit A**. In further support, the Debtor respectfully represents as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. To the extent required, the Debtor consents to the entry of a final order by the Court in connection with this objection.

2. Venue is proper under 28 U.S.C. §§ 1408 and 1409.

Brent C. Strickland, Esquire (Bar No. 452880)
Whiteford, Taylor & Preston L.L.P.
111 Rockville Pike, Suite 800
Rockville, Maryland 20850
Phone: (410) 347-9402
Facsimile: (410) 223-4302
Email: bstrickland@wtplaw.com

3. The bases for the relief requested herein are sections 105(a) and 502(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Bankruptcy Rules 3003 and 3007, and Bankruptcy Local Rule 3007-1.

## FACTUAL BACKGROUND

### A.   The Bell Family and the Property

4. The Debtor is a limited liability company formed under the laws of the District of Columbia on October 27, 2021. The original members of the Debtor were siblings Natalie Denise Bell, Reginald Sanford Bell, and Nicola Regina Bell (collectively, the "Bell Family").

5. The Bell Family inherited the single-family residential property located at 5703 9th Street, NW, Washington D.C (the "Property") when their parents passed away.

6. The Bell Family determined that the value of the Property could be maximized if the Property could be remodeled into a two-unit residential condominium property (the "Project").

7. In order to proceed with the renovation, the Bell Family entered into a Development Services Agreement with 5703 9th Manager, LLC (the "Developer"), whereby Developer would oversee all of the administrative and management tasks necessary for the completion of the Project.

### B.   The WCP Loan

8. In order to finance the project, the Debtor sought to enter into a loan transaction with WCP as the lender.[1] As a condition to WCP's agreement to provide a loan to the Debtor, WCP required that the Debtor's operating agreement be amended to add James Smith as a member along with the Bell Family. James Smith is not a member of the Bell Family, but is the owner of Avamere Construction, LLC, the general contractor for the Project. WCP required that Mr. Smith be added as a member so that an experienced builder was a member of the Debtor.

---

[1] WCP was the initial lender. In light of the fact that the proof of claim filed by WCP lists it as a servicer, the Debtor assumes that WCP no longer holds the note evidencing the loan but sold or assigned it at some point.

9. Following this change to the Debtor's membership, WCP made a loan to the Debtor evidenced by a Commercial Deed of Trust Note dated January 19, 2022 (the "Note") in the stated principal amount of $1,064,000. A true and correct copy of the Note is attached hereto as **Exhibit B.** The Note is secured by a Deed of Trust on the Property. The Note had a maturity date of one (1) year (i.e., January 19, 2023).

10. Although the stated principal amount of the loan was $1,064,000, WCP did not loan this amount to the Debtor. In fact, WCP only actually loaned $284,100, consisting of the following:

　　a. "Cash out" to borrower from the HUD-1 ($190,045.76);

　　b. $49,954.24, which is the total settlement charges of $873,954.24 less the construction draw budget of $749,000 and the $75,000 interest reserve; and

　　c. $44,100 in construction draws actually funded.

A true and correct copy of the Settlement Statement dated January 19, 2022, is attached hereto as **Exhibit C.**

　　C.　**The WCP Loan Extension Request**

11. After the loan closing, the Developer proceeded with the demolition phase of the Project and undertook to obtain all necessary permits from the District of Columbia. The permits were required for the construction phase of the Project after the demolition phase was completed.

12. The permitting process in the District of Columbia was extremely slow, rendering it impossible for the Developer to complete the Project by the loan maturity date of January 19, 2023. Recognizing this, the Developer contacted WCP on November 28, 2022, advising it of the permitting delays and requesting an extension of the January 19, 2023, maturity date. *See* email correspondence from Will Lansing to Jared Fausnaught at WCP attached hereto as **Exhibit D.**

3

13. The very next day, Mr. Fausnaught responded to Developer by thanking him for reaching out so far in advance of the maturity date and indicating that he would reach out to WCP's investors and see what they would be willing to do in terms of an extension. *See* email correspondence attached hereto as **Exhibit E**.

14. When no response was provided by WCP to the extension request, the Developer sent follow up inquiries on December 4, 2022 and December 15, 2022. *See* email correspondence attached hereto as **Exhibit F**.

15. On December 19, 2022, WCP finally responded and indicated that WCP was "working out some issues with [James Smith] on other properties" which was making the extension more complicated. *See* email correspondence attached hereto as **Exhibit G**.

16. On January 4, 2023, WCP advised Developer that WCP would not provide a loan extension as a result of Mr. Smith's association with the loan, and that the issues with Mr. Smith's other loans "taints" 9th St. *See* email correspondence attached hereto as **Exhibit H.**

17. On February 14, 2023, WCP issued a Notice of Default. Incredibly, the Notice of Default states that the loan is in default for failure to pay off the loan by the maturity date **or request a loan extension timely**. *See* email correspondence attached hereto as **Exhibit I**.

18. WCP thereafter scheduled the Property for foreclosure, necessitating the filing of this Chapter 11 case.

## BASIS FOR OBJECTION

19. The Debtor objects to the Proof of Claim because (a) WCP failed to extend the term of the loan in bad faith, and (b) WCP seeks payment of amounts far in excess of what is actually owed and what is legally permissible.

**A.     Legal Standard**

20.    "Not all claims have equal merit; neither will the filing of a proof of claim automatically result in payment of that claim from the estate." *Torres v. Asset Acceptance, LLC*, 96 F. Supp. 3d 541, 544 (E.D. Pa. 2015). Instead, once "a proof of claim has been filed, the court must determine whether the claim is 'allowed' under [section] 502(a) of the Bankruptcy Code." *Id.* (quoting *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449 (2007)). "Upon objection, the bankruptcy court decides whether to allow or disallow the claim." *Id.* "One reason for disallowance is that 'such claim is unenforceable against the debtor . . . under any agreement or applicable law'." *Id.* (quoting 11 U.S.C. § 502(b)(1)).

**B.     Argument**

21.    Despite having only actually advanced $284,100 to the Debtor, WCP filed a claim in the amount of $441,499.37. This amount includes an alleged ten percent (10%) "default penalty" in the amount of $106,400 which is ten percent (10%) of $1,064,009, even though that amount was never actually lent by WCP to the Debtor.

22.    <u>The Note does not provide for a "default penalty" in any amount</u>.  The Note does, however, provide for a "late charge" equal to ten percent (10%) of the amount due under the Note. **See** Note at p. 4.   In this case, when WCP improperly failed to extend the maturity date of the Note, the amount due under the Note was not $1,064,00; the outstanding principal balance was only $284,100.  As a matter of contract law, the Debtor could not legally be late on a payment that it did not owe.  If WCP is entitled to any late fee, it would be limited to ten percent of $284,100 ($28,410, not the $106,400 claim by WCP).

23.    If WCP contends that the "late charge" on unadvanced loan proceeds is a liquidated damages provision, said provision is unenforceable as a penalty under District of Columbia law. See *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359 (D.C. 1984).

24. Moreover, the Debtor avers, upon information and belief, the construction draw budget purportedly funded at closing and paid to WCP was not in fact funded and is not being held by WCP as stated in the settlement sheet and the proof of claim. The Debtor bases this belief on the fact that the Debtor experienced delays in obtaining construction draw money because WCP indicated that it needed to obtain money from its investors.

25. It appears that WCP has continued to pay interest to itself from the interest reserve account and that the amounts in the proof of claim relating to interest charges are inaccurate. IF WCP continues to pay itself interest, it has waived any default and has *de facto* extended the loan.

26. Lastly, the evidence will show that WCP acted in bad faith by failing to extend the loan maturity due to issues with Mr. Smith's unrelated properties. WCP insisted that Mr. Smith be added to the Debtor as a member and should be estopped from later using his involvement as an excuse not to grant a reasonable extension of the maturity date where there were ample funds in the interest reserve to keep the loan current on a going forward basis.

## **RESERVATION OF RIGHTS**

27. The Debtor reserves the right to amend, modify, or supplement this objection upon response from any interested party.

## **NOTICE**

28. Notice of the hearing on the relief requested in this objection will be provided by the Debtor in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the Bankruptcy Local Rules.

| | |
|---|---|
| Dated:  August 15, 2023 | */s/ Brent C. Strickland* <br> Brent C. Strickland, Esq., Bar No. 452880 <br> WHITEFORD, TAYLOR & PRESTON L.L.P. <br> 111 Rockville Pike, Suite 800 <br> Rockville, MD  20850 <br> Telephone: (410) 347-9402 <br> Fax: (410) 223-4302 <br> Email: bstrickland@whitefordlaw.com <br> <br> *Counsel for Debtor and Debtor-In-Possession* |

13013978