EXHIBIT 1

OPERATING AGREEMENT
OF
5703 9TH, LLC

THIS OPERATING AGREEMENT (this "Agreement") is made and entered into effective for all purposes and in all respects as of the _22ᵗʰ_ day of _November_____, 2021 (the "Effective Date") by and among NATALIE DENISE BELL, REGINALD SANFORD BELL, NICOLA REGINA BELL, and JAMES C. SMITH (individually and collectively, the "Members") and 5703 MANAGER, LLC, a District of Columbia limited liability company (the "Manager").

WHEREAS, the parties hereto desire to join together in a limited liability company for the purposes set forth in Article II hereof pursuant to the District of Columbia Limited Liability Company Act and other relevant laws of the District of Columbia, for the purpose of acquiring, operating, renovating, investing in, owning and developing real estate, acquiring interests in entities that invest in real estate, investing in debt and equity instruments relating to real estate, and all matters related and or incidental thereto;

WHEREAS, the parties hereto desire to set forth herein their agreements and understandings;

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending legally to be bound, hereby covenant and agree as follows:

ARTICLE I
DEFINITIONS

Section 1.1.    Defined Terms.  The terms used in this Agreement with their initial letters capitalized, shall, unless otherwise expressly provided herein, have the meanings specified in this Section 1.1. When used in this Agreement, the following terms shall have the meanings set forth below:

1.1.1.  "Act" shall mean the District of Columbia Limited Liability Company Act, as the same may be amended from time to time.

1.1.2.  "Affiliate" shall mean any individual or Entity, directly or indirectly, through one or more intermediaries, controlling, controlled by or under common control with a Member. The term "control", as used in the immediately preceding sentence, means, with respect to a corporation, the right to exercise, directly or indirectly, more than fifty percent (50%) of the voting rights attributable to the controlled corporation, and, with respect to any individual or Entity, the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of the individual or the controlled Entity.

I

1.1.3.  "Agreement" shall mean this Operating Agreement and all exhibits attached hereto, as originally executed and as amended from time to time in writing.

1.1.4.  "Available Cash" of the Company shall mean all cash funds of the Company on hand from time to time (other than cash funds obtained as contributions to the capital of the Company by the Members and cash funds obtained from loans (excluding excess refinancing proceeds) to the Company) after (i) payment of all operating expenses of the Company as of such time, (ii) provision for payment of all outstanding and unpaid current obligations of the Company as of such time, and (iii) provision for a reasonable working capital reserve for the Company.

1.1.5.  "Bankruptcy" means, with respect to any Member: (i) an assignment for the benefit of creditors; (ii) a voluntary petition in bankruptcy; (iii) adjudication as a bankrupt or insolvent; (iv) the filing of a petition or answer seeking any reorganization, arrangement, liquidation or similar relief under any statute, regulation or law; (v) the filing of an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the Member in any proceeding of this nature; or (vi) seeking, consenting to, or acquiescing in the appointment of a trustee, receiver, or liquidator of such Member's properties or of all or any substantial part of the Member's properties.

1.1.6.  "Capital Account" shall, with respect to each Member, mean the Capital Contribution of a Member (as of any particular date) (i) increased by the Member's distributive share of profits, income and gain of the Company and (ii) decreased by the Member's distributive share of losses and deductions of the Company and distributions by the Company to such Member.

1.1.7.  "Capital Contribution" or "Capital Contributions" shall mean and refer to the amount of cash, and/or the agreed fair market value of property (less the amount of indebtedness, if any, of such Member which is assumed by the Company and/or the amount of indebtedness, if any, to which such property is subject, as of the date of contribution), actually contributed by a Member to the capital of the Company, as well as any additional contributions actually made pursuant to this Agreement

1.1.8.  "Code" shall mean the Internal Revenue Code of 1986, as amended. All references herein to Sections of the Code shall include any corresponding provision or provisions of succeeding law.

1.1.9. "Company" shall refer to 5703 9th, LLC.

1.1.10. "Company Accounting Year" shall mean and refer to the accounting year of the Company, ending December 31 of each year.

1.1.11. "Entity" shall mean any association, corporation, general partnership, limited partnership, limited liability company, joint stock association, joint venture, firm, trust, syndicate, business trust, cooperative, foreign association of like structure, and business enterprise of every nature through which associates join together for the conduct of business.

1.1.12. "Interest" in the Company shall mean the entire ownership interest of a Member in the Company at any particular time, including the right of such Member to any and all benefits to which a Member may be entitled as provided in this Agreement and under the Act, together with the obligations of such Member to comply with all of the terms and provisions of this Agreement and the Act.

1.1.13. "Manager" shall, to the extent appointed by the Members, mean the one or more persons who is selected to conduct the business of the Company and to make decisions with respect to the Company's business, and whose execution of documents on behalf of the Company shall bind the Company.

1.1.14. "Member" or "Members" shall mean and refer to those persons and/or Entities designated as such on Exhibit A attached hereto, either individually or collectively.

1.1.15. "Membership Interest" of a Member shall mean the percentage participation in the Company of such Member as set forth opposite the name of such Member under the column "Membership Interest" in Exhibit A attached hereto, as such percentage may be adjusted from time to time pursuant to the terms hereof.

1.1.16. "Necessary Expenses" shall mean costs and expenses of an essentially non-discretionary nature, including amounts due under agreements and/or legal requirements by which the Company is bound (including regularly scheduled debt service payments and other amounts owing under any third party loans made to the Company, and/or amounts required to be paid to fulfill the Company's obligations under a contract), financing and refinancing expenses, real estate taxes then due and payable, utility costs, insurance premiums, leases, costs of curing legal violations, and other similar non-discretionary types of expenses that the Manager otherwise deems necessary or appropriate in its good faith judgment.

1.1.16. "Pro Rata Part" means the proportion that the Interest of a Member bears to the aggregate Interests in the Company of all Members.

1.1.17. "Substitute Member" shall mean any person or Entity who or which is admitted as a Member of the Company pursuant to Article X hereof.

ARTICLE II
NAME, FORMATION, PURPOSE, RESIDENT AGENT AND TERM

Section 2.1.   Name of Company.  The name of the Company shall be 5703 9th LLC.

Section 2.2.   Formation of Company.  Kevin Michael Musheno shall act as organizer to form a limited liability company under the laws of the District of Columbia by the filing of Articles of Organization (the "Articles") for the Company pursuant to the Act on behalf of the Members, and any and all additional Members and/or Substitute Members.

This Agreement is subject to, and governed by, the Act and the Articles of the Company to be filed with the Department of Consumer & Regulatory Affairs for the District of Columbia. In the event of a direct conflict between the provisions of this Agreement and either the mandatory provisions of the Act or the Articles of the Company, such provisions of the Act or the Articles of the Company, as the case may be, will be controlling.

Section 2.3.    Company Purpose.  The purpose of the Company is as set forth in the recitals set forth above.  The Company may exercise all powers reasonable or necessary to pursue the same.

Section 2.4.    Principal Office; Resident Agent.  The principal office of the Company shall be located at 1445 Church St NW #34, Washington, DC 20005. The Manager may change the principal office of the Company. The resident agent shall be LPRA, Inc. at 4725 Wisconsin Avenue, N.W., Suite 250, Washington, DC 20016.

Section 2.5.    Term.  The term (the "Term") of the Company, which shall mean and refer to the period of time that the Company shall continue in existence, shall be perpetual unless sooner terminated in accordance with the provisions of Section 11.1 hereof.

ARTICLE III
CAPITAL CONTRIBUTIONS, LOANS, LIABILITIES AND SHARES

Section 3.1.    Initial Contributions.  Simultaneously with the execution of this Agreement, each Member shall contribute to the capital of the Company the amounts set forth next to their names on Exhibit A to this Agreement.

Section 3.2.    Subsequent Contributions.  No Member shall be required to make any Capital Contribution to the Company other than the initial Capital Contribution referenced in Section 3.1 hereof, except as may be agreed to buy such Member in writing.  Additional capital may be contributed to the Company, but only upon the written consent of all Members.

Section 3.3.    Member Loans or Services.  Loans or services by any Member to the Company shall not be considered contributions to the capital of the Company and shall be upon such terms as the Member and the Company may negotiate.

Section 3.4.    Capital Account.  An individual Capital Account shall be established and maintained on behalf of each Member, including any Substitute Member or additional Member who shall hereafter receive an Interest in the Company.

Section 3.5.    Interest on Contribution.  No interest shall be paid on any Capital Contribution.

Section 3.6.    Withdrawal of Contribution.  No Member shall have the right to withdraw his or her Capital Contribution, or to demand and receive property of the Company or any distribution in return for his or her Capital Contribution, except as may be specifically provided in

4

this Agreement or required by law.  No Member shall receive out of Company property any part of his or her Capital Contribution until (i) all liabilities of the Company, except liabilities to Members on account of their undistributed income, have been paid or there remains property of the Company sufficient to pay them, and (ii) the consent thereto of all Members is obtained, unless the return of the Capital Contribution may be rightfully demanded as provided in the Act.  Subject to the foregoing provisions of this Section 3.6, a Member may rightfully demand the return of his or her Capital Contribution (i) on the winding up of the Company, or (ii) as may otherwise be provided in the Act.

Section 3.7.    Restoration of Negative Capital Account.  Except as is specifically provided otherwise in this Agreement or in the Act, no Member shall have any liability or obligation to restore a negative or deficit balance in such Member's Capital Account.

Section 3.8.    Liability to Creditors.  No Member (in his or her capacity as a Member) shall be personally liable for losses, costs, expenses, liabilities or obligations of the Company in excess of his or her Capital Contributions or other obligations required under this Article III, without such Member's prior written consent.

Section 3.9.    No Member Responsible for Any Other Members Commitment.  In the event that any Member (or any of such Member's Affiliates) has incurred any indebtedness or obligation prior to the date hereof that relates to or otherwise affects the Company, neither the Company nor any other Member shall have any liability or responsibility for or with respect to such indebtedness or obligation unless the Company or such other Member specifically so consents in writing.  Furthermore, neither the Company nor any Member shall, without its, his or her prior written consent, be responsible or liable for any indebtedness or obligation that is hereafter incurred by any other Member (or any of such Member's Affiliates).  In the event that a Member (or any of such Member's Affiliates (collectively, the "Liable Member")), whether prior to or after the date hereof, incurs (or has incurred) any debt or obligation for which neither the Company nor any of the other Members is to have any responsibility or liability, the Liable Member shall and must indemnify and hold harmless the Company and the other Members from any liability or obligation it or they may incur in respect thereof.

Section 3.10.    Third Party Loans.    Following the contribution of the initial Capital Contributions described in Section 3.1 above, in the event the Company requires funds in addition to the cash receipts of the Company in order to pay Necessary Expenses, the Manager shall first use its commercially reasonable efforts, for and on behalf of the Company, to obtain such funds in the form of loans in the Company's name from third parties (individually and collectively, "Third Party Loans"), which may include the Manager or any principal of the Manager, subject to any pre-existing lender's approval if necessary, on such terms and conditions and with such security as the Manager may deem appropriate in its good faith judgment.

ARTICLE IV
PROFIT AND LOSSES

Section 4.1.    Allocation of Profit and Losses.

5

4.1.1. "Profit" and "Loss" shall, for purposes of this Article IV, mean, for each fiscal year of the Company or other period, an amount equal to the Company's taxable income, gain, loss or deduction for such year or period, determined by the Company's certified public accountants in accordance with Code Section 703(a), with the following adjustments:

(a)     All income or gain of the Company that is exempt from Federal income tax and not otherwise taken into account in computing Profit and Loss pursuant to this Section 4.1.1 shall be added to such taxable income, gain loss or deduction.

(b)     Any expenditure of the Company described in Code Section 705(a)(2)(B) or treated as an expenditure described in such Section and not otherwise taken into account in computing Profit and Loss pursuant to this Section 4.1.1 shall be subtracted from such taxable income, gain, loss or deduction.

4.1.2. Except as otherwise set forth in Section 4.1.3 hereof, the distributive shares of each item of Profit, Loss, deduction, credit or basis of the Company for any Company Accounting Year or other period shall be allocated to the Members pro rata, in proportion to their respective Membership Interests.

4.1.3. The Manager, with the review and concurrence of the Company's accountants, is authorized and directed, in its reasonable discretion, to allocate taxable income, gain, loss, credit and deduction (or items thereof) arising in any Company Accounting Year in a manner other than as provided in Section 4.1.2 hereof if, and to the extent that, the allocations otherwise provided under this Article IV would not be permissible under Code Sections 704(b) and/or 704(c). Any allocation made pursuant to, and in accordance with, this Section 4.1.3 shall be deemed to be a complete substitute for the allocation otherwise provided in Section 4.1.2 hereof, and no amendment of this Agreement or approval of any Member shall be required with respect thereto, and each Member shall, for all purposes and in all respects, be deemed to have approved any such reasonable allocation.

4.1.4. If an Interest is transferred or assigned during a Company Accounting Year, that part of any item of Profit, Loss, income, gain, deduction, credit, basis or tax incidents allocated pursuant to this Article IV with respect to the Interest so transferred shall, in the reasonable discretion of the Manager, either (i) be based on segmentization of the Company Accounting Year between the transferor and the transferee or (ii) be allocated between the transferor and the transferee in proportion to the number of days in such Company Accounting Year during which each owned such Interest, as disclosed by the Company books and records.

## ARTICLE V
## DISTRIBUTIONS

Section 5.1.    Timing of Distribution.   The Available Cash shall to the extent deemed available, be distributed on an annual basis (or more or less frequently if the Manager determines) in accordance with the provisions of this Article V.

Section 5.2.   Distributions of Cash Flow.  Except to the extent that Available Cash shall be distributed upon termination of the Company pursuant to Section 11.2 hereof, the Available Cash generated during a Company Accounting Year and available for distribution as determined by the Manager, shall be distributed among the Members as reasonably determined, in good faith, by the Manager in accordance with the following provisions:

(a)     First, to repay the accrued but unpaid interest and any outstanding principal and fees due in connection with that certain construction loan in the maximum principal amount of $1,050,000 from Washington Capital Partners, as lender, to the Company, as borrower;

(b)     Second, to repay the accrued but unpaid interest and any outstanding principal and fees due in connection with any other Third Party Loans owed by the Company to any other lender;

(c)     Third, to repay the accrued but unpaid interest and any outstanding principal and fees due in connection with any other indebtedness owed by the Company to any other lender;

(d)     Fourth, to satisfy any and all amounts (including any unpaid and accrued management and development fees and reimbursements) due and payable to the Manager pursuant to that certain Development Services Agreement dated _November 22_ , 2021 by and between the Company, as owner, and the Manager, as manager; and

(e)     Finally, to Natalie Bell, Reginald Bell, and Nicola Bell equally.  5703 Manager shall not earn any additional payout beyond that identified in the Development Services Agreement. James C. Smith shall not receive any additional payout beyond the Construction Contract amount. All final distributions shall be split equally amongst the Bell Family Members .

All distributions of Cash Flow, if any, shall be distributed as determined by the Manger in his absolute and sole discretion. To the extent required, reserves will be held to satisfy income tax and other filing related expenses of the entity. Reserves will, to the extent funds are released by the Manager for distribution, be distributed as determined by the Manager in his absolute and sole discretion.  Non-cash receipts by the Company shall be distributed as determined by the Manager in his absolute and sole discretion.   To assist the Manager's valuation of non-cash assets, the Manager may retain, at the Company's expense, such experts and consultants as may be reasonably selected by the Manager.

ARTICLE VI
LEGAL TITLE TO COMPANY ASSETS

Legal title to the Company Assets shall be held in the name of the Company, or in any other manner which the Manager determines to be in the best interest of the Company.

ARTICLE VII
MANAGEMENT AND CONTROL OF BUSINESS

Section 7.1.   General.  The Members shall use their best efforts to carry out the business of the Company and shall devote to the management of the business and affairs of the Company

7

such time as it reasonably deems to be necessary. All decisions relating to the business of the Company ("Major Acts"), including without limitation those matters set forth in Section 7.3, shall be made with the consent of Members owning in total 51% of all the Membership Interests, subject, however, to the provisions of Section 7.4 below.

Section 7.2.    Rights of Manager. The Manager shall be responsible for implementing the decisions of the Company and for conducting the ordinary and usual business and affairs of the Company. The acts of the Manager will bind the Company when within the scope of the Manager's authority. Except as otherwise specified in Section 7.4 below, in no event shall the Manager take any Major Acts or expend any money as a result of a Major Act, unless approved in writing by Members owning in total 51% of all the Membership Interests. The Manager shall at all times conform to policies and programs established and approved by the Members in accordance herewith. The Manager shall keep the other Members informed as to all matters of concern to the Company. Notwithstanding the foregoing, the Manager may not make any material modifications to the basic business plan of the Company as set forth on Exhibit B hereto (the "Business Plan") without consent of Members owning a majority of the Membership Interests.

Section 7.3.    Limitation on Authority of the Manager.

(A)    Notwithstanding anything in this Agreement to the contrary, but subject to the provision of Section 7.4 below, the Manager shall not, without the prior written consent of owners of 51% or more of the Membership Interests, take any action outside of conducting the specified business of the Company (as more fully identified in Section 2.3 above) in accordance with the terms of this Agreement including, without limitation, the following Major Acts:

(1)    The borrowing of any funds by the Company (and the selection of any lender), or the execution of any promissory note, bond, security agreement, mortgage, deed of trust, guarantee, or other document or instrument evidencing any indebtedness of the Company or pledging, granting a security interest in, placing a lien on or otherwise encumbering any of the Company's assets or the making of any loans or the extension of any credit by the Company or the binding of the Company as guarantor or surety for the Members on behalf of any Person;

(2)    Causing or permitting the Company to sell, exchange, transfer or otherwise dispose of, or approve any offer to sell or exchange, the Project, or any material Company asset;

(3)    The confession by the Company of a judgment against itself, the Company's assets, or any portion thereof, or the assignment of Company assets in trust for creditors.

(4)    The taking of any action by which the business of the Company shall be materially endangered or prejudiced, or the result of which would be to prevent the Company from continuing to carry on the Company's ordinary business.

8

(5)     Admitting any additional person as a Member to the Company, except as otherwise permitted in this Agreement.

(6)     Dissolution or liquidation of the Company other than in accordance with the terms of this Agreement.

(7)     Any other item pursuant to this Agreement which requires the approval or consent of Members owning a stated percentage of the total Membership Interests.

(B)     If the Manager desires the undertaking of a Major Act, he shall either (i) submit the proposal to the other Members in writing or (ii) request a meeting in accordance with Section 8.2.  The failure of such other Members to consent in writing to a proposal within fifteen (15) business days of the receipt of the proposal shall be deemed a disapproval.

Section 7.4.   Designation of Initial Manager.  5703 Manager, LLC is hereby designated as the initial Manager of the Company.  Subject to the following sentence, the Manager may be replaced by the affirmative vote of Members owning 66% of the Membership Interests. Additionally, and notwithstanding anything in this Agreement to the contrary, Manager shall have full authority to make all decisions on behalf of the Company (including those designated above as Major Acts) and to execute all documents required to be executed by the Company in connection with its business, including, but not limited to, all leases, financing documents, deeds, contracts, deeds of trusts and all other types of documents and instruments.

Section 7.5.   Dispute Resolution.    If any question, disagreement, difference or controversy shall arise among the Members concerning the affairs, transactions or business of the Company, the meaning or interpretation of this Agreement or the duties, or obligations of the Members, any Member may cause such question, disagreement, difference or controversy to be submitted to and determined by arbitration in accordance with the Rules of Commercial Arbitration of the American Arbitration Association in effect at the time such matter is submitted for arbitration (and the other  Members hereby consent to such submission and determination), it being agreed and understood that any dispute among the Members under this Agreement shall be resolved by arbitration rather than litigation.  The arbitration shall be conducted in Washington, D.C. by a single arbitrator using the expedited procedures provisions of the American Arbitration Association and shall be subject to, and the arbitrators shall have the powers and rights afforded by, the arbitration statute(s) then in effect in the District of Columbia.  Costs of arbitration shall be borne by the non-prevailing party, unless the arbitrator determines it would be unjust to do so under all the facts and circumstances.  A judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction over the parties.

Section 7.6.   Compensation of Manager.  Except as expressly provided herein, the Manager shall not receive any compensation from the Company for services rendered in its capacity as Manager of the Company.

Section 7.7.   Company Expenses; Reimbursement.  The Company shall bear all costs and expenses incurred in connection with the management and operation of the business and affairs of

the Company (including costs to obtain financing), or in carrying out the business, purposes, and objectives of the Company. If the Manager at any time or from time to time advances its own funds to pay any such costs or expenses, he shall be entitled to reimbursement of such funds from the Company promptly upon demand (to the extent funds are available), provided, that the Manager is permitted to make such expenditures on behalf of the Company pursuant to the terms of this Agreement and he submits evidence of such expenditures such as cancelled checks or paid invoices to the other Members, if so requested.

Section 7.8.    Other Activities of Members.

A.    The Company is formed solely for the purposes set forth herein and this Agreement shall not be deemed to create any type of partnership or venture between or among the Members with respect to any activities whatsoever other than the activities within the purposes of the Company as hereinabove specified. No Member shall have the power to bind the Company or any other Member except as specifically provided in this Agreement. Neither any Member nor the Company shall be responsible or liable for any indebtedness or obligation of the other Member incurred either before or after the execution of this Agreement, except as to those joint responsibilities, liabilities, indebtedness or obligations incurred pursuant to and as limited by the terms of this Agreement.

B.    Except as set forth in this Section 7.8, each Member may have other business interests or may engage in other business ventures of any nature or description whatsoever including owning or operating real estate projects which compete with the Company's projects, and neither the Company nor the other Members shall have any right to participate in such other business ventures or to receive or share in any income or profits derived therefrom.

ARTICLE VIII
MEMBERS, INTERESTS, MEETINGS

Section 8.1.    Names and Addresses of Members.    The names of Members, their respective addresses, their initial Capital Contributions to the Company, and their respective Membership Interests in the Company are set forth on Exhibit A attached hereto and made a part hereof. A Member need not be an individual.

Section 8.2.    Meetings of the Members.

8.2.1.    The annual meeting of the Members shall be held at a reasonable hour on the second Tuesday of the second month of each Company Accounting Year, or at such other time as the Manager may determine. Special meetings of Members may be called by any Member. Meetings of the Members shall be held at the principal office of the Company, or at such other place as the Members may mutually determine.

8.2.2.    The Company shall deliver or mail written notice stating the date, time and place of any meeting of Members and, if required by law, a description of the purposes for which the meeting is called to each Member of record entitled to vote at the meeting, at such address as

10

appears in the records of the Company, such notice to be mailed at least ten (10), but not more than sixty (60), days before the date and time of the meeting. A Member may waive notice of any meeting, before or after the date of the meeting, by delivering a signed waiver to the Company for inclusion in the minutes of the Company. A Member's attendance at any meeting, in person or by proxy, (i) waives objection to lack of notice or defective notice of the meeting, unless the Member at the beginning of the meeting affirmatively objects to holding the meeting or transacting business at the meeting, and (ii) waives objection to consideration of a particular matter at the meeting that is not within any purposes described in the meeting notice, unless the Member affirmatively objects to considering the matter when it is presented.

8.2.3.  The record date for the purpose of determining the Members entitled to notice of a Members' meeting, for demanding a meeting, for voting or for taking any other action shall be the tenth (10th) day prior to the date of the meeting or other action.

8.2.4.  A Member may appoint a proxy to vote or otherwise act for the Member pursuant to a written appointment form executed by the Member or the Member's duly authorized attorney-in-fact. An appointment of a proxy is effective when received by the Company. The general proxy of a fiduciary is given the same effect as the general proxy of any other Member. A proxy appointment is valid for eleven (11) months unless otherwise expressly stated in the appointment form.

8.2.5.  At any meeting of Members, each Member entitled to vote shall have a number of votes equal to the product of (i) his or her Membership Interest as set forth on Exhibit A hereto, as the same may be amended from time to time, multiplied by (ii) one hundred (100). At any meeting of Members, the presence of Members entitled to cast more than fifty percent (50%) of the total votes of all Members entitled to vote at such meeting constitutes a quorum; provided, however, that, so long as there shall be two (2) Members, a quorum shall require attendance by both Members. Upon the occurrence of a Cessation Event (as hereafter defined), a former Member shall not be entitled to any vote, including, without limitation, a vote to determine whether the Company should purchase the Interest of such former Member. Also, any assignee of a Member's Interest in the Company shall not be entitled to vote on or participate as to any matters at any meeting unless such assignee become a Substitute Member as contemplated in Article X hereof. Nothing herein shall be deemed to limit the power or authority of the Manager to make all decisions with respect to the operation and conduct of the Company's business.

8.2.6.  Subject to Section 8.2.2 and the applicable laws of the District of Columbia, any action required or permitted to be taken at a meeting of the Members may be taken without a meeting if the action is taken by all of the Members entitled to vote on the action. The action must be evidenced by one or more written consents describing the action to be taken, signed by all the Members entitled to vote on the action, and delivered to the Company for inclusion in the minutes. The record date for determining Members entitled to take action without a meeting is the first date a Member signs the consent to such action.

8.2.7.  Any or all Members may participate in any Company meeting of Members by, or through the use of, any means of communication by which all Members participating may

11

simultaneously hear each other during the meeting. A Member so participating is deemed to be present in person at the meeting.

8.2.8.   At any Company meeting of the Members, the Members shall appoint a person to preside at the meeting and a person to act as secretary of the meeting. The secretary of the meeting shall prepare minutes of the meeting which shall be placed in the appropriate records of the Company.

8.2.9.   Members, if any, which are corporations shall participate in the exercise of the powers of the Company through representatives duly authorized by such Member pursuant to the applicable corporate law.

## ARTICLE IX
## ACCOUNTING AND RECORDS

Section 9.1.   <u>Records and Accounting</u>.  The books and records of the Company shall be kept, and the financial condition and the results of its operations recorded, in accordance with the accounting methods elected to be followed by the Company for Federal income tax purposes.  The books and records of the Company shall reflect all Company transactions and shall be appropriate and adequate for the Company's business.  The fiscal year of the Company for financial reporting and for Federal income tax purposes shall be the calendar year.  The Company shall maintain the following at its registered office:

(a)   A current list of the full name and last known business address of each Member;

(b)   A copy of the filed Articles of Organization and all amendments thereto, together with executed copies of any powers of attorney pursuant to which any document has been executed;

(c)   Copies of the Company's federal, state and local income tax returns and reports and financial statements, if any, for the three (3) most recent years;

(d)   Copies of this Operating Agreement and any amendments thereto; and

(e)   Unless contained in this Operating Agreement, the Articles of Organization or any amendments thereto, a writing setting out:

(1)   The amount of cash and a description and statement of the agreed value of the other property or services contributed by each Member and which each Member has agreed to contribute;

(2)   The items as to which or events on the happening of which any additional contributions agreed to be made by each Member are to be made;

12

(3)     Any right of a Member to receive, or of a Manager to make, distributions which include a return of all or any part of the Member's contribution; and

(4)     Any events upon the happening of which the Company is to be dissolved and its affairs wound up.

Section 9.2.     Access to Accounting Records. All books and records of the Company shall be made available at the principal office of the Company and maintained at such place as the Company may find convenient. Each Member, his, her or its duly authorized representative, shall have access to the books and records of the Company and the right to inspect and copy them at all reasonable times. The Company may assess reasonable fees for copying expenses and search and handling costs prior to giving over possession of the copies.

Section 9.3.     Annual and Tax Information. The Manager shall use his best efforts to cause the Company to deliver to each Member within sixty (60) days after the end of each calendar year all information necessary for the preparation of such Member's Federal income tax return. The Members agree to report on their returns such of the Company operations as are attributable to them and not to take reporting positions contrary to the Company's reporting positions. The Members shall also use their best efforts to cause the Company to prepare, within one hundred twenty (120) days after the end of each calendar year, a financial report of the Company for such calendar year, containing a balance sheet as of the last day of the year then ended, an income statement for the year then ended, a statement of sources and applications of funds, and a statement of reconciliation of the Capital Accounts of the Members.

Section 9.4.     Accounting Decisions. All decisions as to accounting matters, except as otherwise specifically set forth herein, shall be made by the Manager in accordance with generally accepted accounting principles. The Manager may rely upon the advice of the Company's Accountants.

Section 9.5.     Federal Income Tax Elections. The Company may make all elections for Federal income tax purposes upon the decision of the Manager; provided, however, that, in case of a transfer of all or part of the Interest of any Member or the distribution to a Member by the Company of its property, the election pursuant to Sections 734, 743 and 754 of the Code, as amended (or corresponding provisions of future law), to adjust the basis of the assets of the Company shall be timely made.

ARTICLE X
ASSIGNABILITY/TRANSFER

Section 10.1.     Restriction on Transfer. No Member shall, without the written consent of Members owning a combined 75% of the Membership Interests of the Company, which consent may be granted or denied in each Member's sole and unreviewable discretion, transfer, sell, encumber or dispose of his Membership Interest now owned or hereafter acquired. Additionally, no additional Members shall be admitted to the Company without the express consent of all the Members, except as otherwise expressly provided herein.

Section 10.2.  <u>Transfer to Related Entity</u>.  Notwithstanding <u>Section 10.1</u> above, a transfer by a Member to a spouse, lineal descendant or to a trust created by a Member for tax planning purposes shall be permitted without the consent of any other Member.

## ARTICLE XI
## DISSOLUTION, LIQUIDATION AND TERMINATION

Section 11.1.  <u>Events of Dissolution</u>.   The Company shall be dissolved and shall commence winding up its affairs upon the first to occur of the following:

(a)     The time fixed in the Articles as the expiration of the term of the Company;

(b)     The unanimous consent of the Members;

(c)     Any event which makes it unlawful or impossible to carry on the Company's business;

(d)     The sale, disposition or abandonment of all or substantially all of the Company's property;

(e)     The entry of a decree of judicial dissolution under the Act; or

(f)     The death, retirement, resignation, expulsion, dissolution or bankruptcy of a Member, or any other event which terminates the membership of a Member in the Company, unless within ninety (90) days after such event a majority in interest of the remaining Members agree in writing to continue the business of the Company.

Section 11.2.  <u>Settling of Accounts</u>

11.2.1. In settling accounts of the Company after its dissolution, the liabilities of the Company shall be paid in the following order, unless otherwise required by the Act:

(i)     To creditors, in the order of priority as provided by law, except Members of the Company on account of their Capital Contributions or Capital Accounts; and

(ii)     To Members of the Company in respect of their Capital Accounts.

## ARTICLE XII
## INDEMNIFICATION

Section 12.1.  <u>Indemnification of Organizers or Members</u>.

12.1.1. To the greatest extent not inconsistent with the laws and public policies of the District of Columbia, the Company shall indemnify any organizer or Member of the Company

14

(any such organizer or Member who is a person, and any responsible officers, partners, shareholders, directors, or manager of such organizer or Member which is an Entity, hereinafter being referred to in this Article as an "individual") made a party to any proceeding because such individual is or was a Member or organizer, as a matter of right, against all liability incurred by such individual in connection with any proceeding; provided that it shall be determined in the specific case in accordance with Section 12.1.4 that, indemnification of such individual is permissible in the circumstances because the individual has met the standard of conduct for indemnification set forth in Section 12.1.3. The Company shall pay for or reimburse the reasonable expenses incurred by a Member or organizer in connection with any such proceeding in advance of final disposition thereof if (i) the individual furnishes the Company a written affirmation of the individual's good faith belief that he, she or it has met the standard of conduct for indemnification described in Section 12.1.3; (ii) the individual furnishes the Company a written undertaking, executed personally or on such individuals behalf, to repay the advance if it is ultimately determined that such individual did not meet such standard of conduct; and (iii) a determination is made in accordance with Section 12.1.4 that, based upon facts then known to the Company making the determination, indemnification would not be precluded under this Section. The undertaking described in clause (ii) of this Section must be a general obligation of the individual, subject to such reasonable limitations as the Company may permit, but need not be secured and may be accepted without reference to financial ability to make repayment. The Company shall indemnify a Member or organizer of the Company who is wholly successful, on the merits or otherwise, in the defense of any such proceeding, as a matter of right, against reasonable expenses incurred by the individual in connection with the proceeding without the requirement of a determination as set forth in Section 12.1.3. Upon demand by a Member or organizer for indemnification or advancement of expenses, as the case may be, the Company shall expeditiously determine whether the Member or organizer is entitled thereto in accordance with this Section. The indemnification and advancement of expenses provided for under this Section shall be applicable to any proceeding arising from acts or omissions occurring before or after the adoption of this Section.

12.1.2. The Company shall have the power, but not the obligation, to indemnify any individual who is or was an employee or agent of the Company to the same extent as if such individual was a Member or organizer of the Company.

12.1.3. Indemnification of an individual is permissible under this Section 12.1 only if:

(i)    such individual conducted himself, herself or itself in good faith, and such individual reasonably believed that his, her or its conduct was in, or at least not opposed to, the Company's best interest;

(ii)    in the case of any criminal proceeding, such individual had no reasonable cause to believe his or her conduct was unlawful; and

(iii)    such individual is not adjudged in any such proceeding to be liable for gross negligence or willful misconduct in the performance of his or her duty. The termination of a proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its

equivalent is not, in and of itself, determinative that the individual did not meet the standards of conduct described in this Section 12.1.3.

12.1.4. A determination as to whether indemnification or advancement of expenses is permissible shall be made by the Manager.

12.1.5. Indemnification shall also be provided for an individual's conduct with respect to an employee benefit plan if the individual reasonably believed his conduct to be in the interests of the participants in and beneficiaries of the plan.

12.1.6. Nothing contained in this Section shall limit or preclude the exercise or be deemed exclusive of any right under the law, by contract or otherwise, relating to indemnification of or advancement of expenses to any individual who is or was a Member or organizer of the Company or is or was serving at the Company's request as a director, officer or partner, or serving as the Company manager, trustee, employee, or agent of a foreign or domestic partnership, association, limited liability company, company, corporation, joint venture, trust, employee benefit plan or other enterprise, whether for profit or not. Nothing contained in this Section shall limit the ability of the Company otherwise to indemnify or advance expenses to any individual. It is the intent of this Section to provide indemnification to Members and organizers of the Company to the fullest extent now or hereafter permitted by the law consistent with the terms and conditions of this Section. Indemnification shall be provided in accordance with this Section irrespective of the nature of the legal or equitable theory upon which a claim is made including without limitation negligence, breach of duty, mismanagement, waste, breach of warranty, strict liability, violation of federal or state securities law, violation of the Employee Retirement Income Security Act of 1974, as amended, or violation of any other state or federal law.

12.1.7. For purposes of this Section:

(i)    The term "expenses" includes all direct and indirect costs (including without limitation counsel fees, retainers, court costs, transcripts, fees of experts, witness fees, travel expenses, duplicating costs, printing and binding costs, telephone charges, postage, delivery service fees, and all other disbursements or out-of-pocket expenses) actually incurred in connection with the investigation, defense, settlement or appeal of a proceeding or establishing or enforcing a right to indemnification under this Section, applicable law, or otherwise.

(ii)    The term "liability" means the obligation to pay a judgment, settlement, penalty, fine, excise tax (including an excise tax assessed with respect to an employee benefit plan) or reasonable expenses incurred with respect to a proceeding.

(iii)    The term "party" includes an individual who was, is or is threatened to be made a named defendant or respondent in a proceeding.

(iv)    The term "proceeding" means any threatened, pending or completed action, suit, or proceeding, whether civil, criminal, administrative or investigative and whether formal or informal.

16

(v)     The Company may purchase and maintain insurance for its benefit, the benefit of any individual who is entitled to indemnification under this Section, or both, against any liability asserted against or incurred by such individual in any capacity or arising out of such individuals service with the Company, whether or not the Company would have the power to indemnify such individual against such liability.

ARTICLE XIII
GENERAL PROVISIONS

Section 13.1.  Assurances.  Each Member shall execute all such certificates and other documents and shall do all such filing, recording, publishing and other acts as may appropriate to comply with the requirements of law for the formation and operation of the Company and to comply with any laws, rules, and regulations relating to the acquisition, operation, or holding of the property of the Company.

Section 13.2.  Notifications.  Any notice, demand, consent, election, offer, approval, request, or other communication (collectively a "notice") required or permitted under this Agreement must be in writing and either delivered personally or sent by certified or registered mail, postage prepaid, return receipt requested. Any notice to be given hereunder by the Company shall be given by the Members.  A notice must be addressed to a Member at the Member's last known address on the records of the Company.  A notice to the Company must be addressed to the Company's principal office.  A notice that is sent by mail will be deemed given two (2) business days after it is mailed. Any party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees.

Section 13.3.  Specific Performance.  The parties recognize that irreparable injury will result from a breach of any provision of this Agreement and that money damages will be inadequate to fully remedy the injury.  Accordingly, in the event of a breach or threatened breach of one or more of the provisions of this Agreement, any party who may be injured (in addition to any other remedies which may be available to that party) shall be entitled to one or more preliminary or permanent orders (i) restraining and enjoining any act which would constitute a breach or (ii) compelling the performance of any obligation which, if not performed, would constitute a breach.

Section 13.4.  Complete Agreement.  This Agreement constitutes the complete and exclusive statement of the agreement among the Members.  It supersedes all prior written and oral statements, including any prior representation, statement, condition, or warranty.  Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of all of the Members.

Section 13.5.  Applicable Law.  All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this

17

Agreement shall be governed by the internal law, not the law of conflicts, of the District of Columbia.

      Section 13.6.   <u>Section Titles</u>.  The headings herein are inserted as a matter of convenience only, and do not define, limit, or describe the scope of this Agreement or the intent of the provisions hereof.

      Section 13.7.   <u>Binding Provisions</u>.  This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors, and permitted assigns.

      Section 13.8   <u>Jurisdiction and Venue</u>.  Any suit involving any dispute or matter arising under this Agreement may only be brought in the United States District Court for the District of Columbia or any court in the District of Columbia having jurisdiction over the subject matter of the dispute or matter.  All Members hereby consent to the exercise of personal jurisdiction by any such court with respect to any such proceeding.

      Section 13.9.   <u>Terms</u>.  Common nouns and pronouns shall be deemed to refer to the masculine, feminine, neuter, singular and plural, as the identity of the Person may in the context require.

      Section 13.10. <u>Severability of Provisions</u>.  Each provision of this Agreement shall be considered severable; and if, for any reason, any provision or provisions herein are determined to be invalid and contrary to any existing or future law, such invalidity shall not impair the operation of or affect those portions of this Agreement which are valid.

      Section 13.11. <u>Counterparts</u>.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document.  The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

      IN WITNESS WHEREOF, AND INTENDING TO BE LEGALLY BOUND HEREBY, the parties have executed, or caused this Agreement to be executed, under seal, as of the date set forth hereinabove.

[SIGNATURES ON FOLLOWING PAGE]

MEMBERS:

_____
Natalie Denise Bell

_____
Reginald Sanford Bell

_____
Nicola Regina Bell

_____
James C. Smith

MANAGER:

5703 MANAGER, LLC,
a District of Columbia limited liability company

By: _____
        William Lansing, Manager

EXHIBIT A

5703 9TH, LLC
SCHEDULE OF MEMBERSHIP INTERESTS

| MEMBERS NAME AND ADDRESS | CAPITAL CONTRIBUTION | MEMBERSHIP INTEREST |
|---|---|---|
| Natalie Denise Bell 8010 Blair Mills Way, Apt. 712 East Silver Spring MD 20910 | $220.00 | 22% |
| Reginald Sanford Bell 7800 Hanover Parkway Apt. 103 Greenbelt, MD 20770 | $220.00 | 22% |
| Nicola Regina Bell 5703 9th Street NW Washington DC 20011 | $220.00 | 22% |
| James C. Smith 44050 Ashburn Shopping Plaza Suite 195-637 Ashburn, VA 20147 | $340.00 | 34% |

EXHIBIT B

5703 9TH, LLC
BUSINESS PLAN

[Attached]