# EXHIBIT 9

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-131-ELG |
| | ) | (Chapter 11) |
| 5703 9TH, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION TO DEBTOR'S OBJECTION TO
PROOF OF CLAIM NO. 2 FILED BY WCP FUND I LLC**

Comes now WCP Fund I LLC as servicer for U.S. Bank National Association, not in its individual capacity but solely as trustee of Homeward Opportunities Fund Trust 2020-BPL1 ("WCP"), by and through undersigned counsel, and in opposition to the Debtor's Objection to Proof of Claim No. 2. Filed by WCP Fund I LLC (the "Objection," as found at DE #31) states as follows:

**I.    Introduction**

5703 9th LLC (the "Debtor") objects to WCP's claim on the theories that (i) a late fee is miscalculated; (ii) WCP has paid itself interest for which the underlying proof of claim (the "Claim") does not properly account; (iii) WCP acted "in bad faith" by declining to extend the loan maturity date; and (iv) WCP did not properly reserve monies for a construction draw. The Objection should be overruled because (a) the late fee is a precise, bargained-for sum, clearly set forth in the underlying promissory note; (b) there is no evidence of WCP paying itself interest

1

post-petition; (c) WCP had every right to decline to extend a loan payoff date; and (d) there is no evidence of WCP being unable to fund a construction draw.

Two of these issues are addressed through the plain language of the subject loan documents; two of these issues are assertions of the Debtor that appear to be unmoored to any factual construct and which WCP, in turn, respectfully submits to be counterfactual in nature. The Objection is thusly meritorious of being overruled.

## II.     Standard

Title 11 of the United States Code (the "Bankruptcy Code") permits creditors – and other parties in interest – to object to claims filed in any given case. 11 U.S.C. § 502(a). Once an objection is posited, a claim is to be allowed "except to the extent that – (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured…" 11 U.S.C. § 502(b).

## III.    Relevant Facts

The following facts are of core relevance and, notwithstanding the adversarial nature of the Objection, do not appear to be in dispute:

1. The Debtor signed a promissory note (the "Note"), evidencing a face amount of $1,064,000.00, on January 19, 2022. *See* Objection, DE #31, at ¶ 9.

2. A copy of the Note is appended to the Objection as Exhibit B. *Id.* at Exhibit B.

3. The Note is secured by a lien on the Debtor's eponymous property. *Id.* at ¶ 9.

4. The Note expressly provides, *inter alia*, "Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion." Note at § 1, ¶ 3.

2

5.	Pursuant to the foregoing provision, WCP withheld a construction draw at closing on the loan, of which $704,900.00 was never disbursed to the Debtor. *See* Claim, Part 5 (payoff statement showing credit to Debtor for undisbursed construction draw).

6.	The Note matured on January 19, 2023, one year after the date of the instrument's making. Note at § 3, ¶ 2.

7.	"The permitting process in the District of Columbia was extremely slow, rendering it impossible for the Developer to complete the Project by the loan maturity date of January 19, 2023." Objection, DE #31, at ¶ 12.

8.	The Debtor asked WCP for a loan extension. *Id.*

9.	WCP declined to give the Debtor a loan extension. *Id.* at ¶¶ 15-16.

10.	After the loan matured, WCP notified the Debtor that it was in default for failing to pay the debt at maturity. *Id.* at ¶ 17.

11.	The Note plainly provides for a "late charge" of 10%, with the sum being computed against a missed installment payment during the life of the loan and against the full face value of the Note if the loan is not paid at maturity. Note at § 5, ¶ 5 ("In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a 'late charge' in an amount equal to 10.00% of such installment. **In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to 10.00% of the original principal amount of this Note**.") (emphasis added).

12.	When the Debtor failed to pay the Note at maturity, WCP applied the foregoing late charge. Objection, DE #31, at ¶ 21.

3

### IV. Argument: The Objection Should be Overruled

#### a. WCP Had No Obligation to Extend the Maturity Date

The Debtor contends that "acted in bad faith by failing to extend the loan maturity due to issues with Mr. Smith's unrelated properties." *Id.* at ¶ 26. In this assertion are two innately problematic premises: (1) WCP had an obligation to extend the loan maturity date; and (2) issues related to an equity member of the Debtor were not cause sufficient for WCP to breach that obligation. Neither assertion is supported by fact or law.

As a starting point, there is nothing in the Note – or the accompanying deed of trust – that requires WCP to extend the maturity date of the Debtor's obligation. The Note, quite plainly, provides for monies to be repaid one year from the date of the instrument's making; there is no clause that allows an option to extend, that requires WCP to finance an extension, or anything of the like. The Debtor received the benefit of WCP's monies and WCP, in turn, received a promise to have that money returned – with interest – one year henceforth. The parties did not agree to any different temporal construct. *See, e.g.*, *Donnelly v. Branch Banking & Tr. Co.*, 971 F. Supp. 2d 495, 509 (D. Md. 2013) ("Plaintiffs' claim fails for the simple reason that Plaintiffs do not and cannot plausibly allege that BB & T prevented them from performing their obligations pursuant to the underlying loan agreement. The loan agreement did not oblige Defendant to extend the maturity date of the Note and prevent Plaintiffs' default…").

As a necessary extension of the Note lacking any provision for an extension, the Debtor cannot argue that WCP erred in not extending the maturity date because of issues being encountered with one of the Debtor's members on other projects. *See, e.g.*, *Carey Canada, Inc. v. Columbia Cas. Co.*, 940 F.2d 1548, 1556 (D.C. Cir. 1991) ("'the 'four corners' rule, which excludes extrinsic evidence if the contract is clear 'on its face'' shows that there ''is ancient

4

wisdom as well as ancient prejudice'") (quoting *FDIC v. W.R. Grace & Co.*, 877 F.2d 614, 620–21 (7th Cir. 1989)).

Fundamentally, even if WCP was obligated to consider an extension of the maturity date (which WCP very much was not), having issues with one of the Debtor's members – who was also the contractor on the project – would seem perfectly good cause to decline to afford such relief. But, again, WCP had no such obligation. And District of Columbia law is well settled that where an agreement is plain on its face, an additional obligation of one party will not be inferred, no matter the desire of the other party.

### b. The Late Charge is Properly Calculated and Lawful

The Debtor next takes issue with the late charge called for in the Note, suggesting (i) the sum is miscalculated, since the construction reserve was never disbursed; and (ii) the sum is an illegal penalty. Objection, DE #31, at ¶¶ 21-22. The Debtor is errant in both regards, with the former contention being belied by the language of the Note and the latter contention being against the weight of applicable law.

Vis a vis the calculation, the Debtor argues that it should only be charged a late fee equal to 10% of the unpaid portion of the loan. And this would be absolutely correct if the Debtor missed an installment payment and caught up that missed installment, as the Note clearly provides "[i]n the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a 'late charge' in an amount equal to 10.00% of such installment." Note at § 5, ¶ 5.

Problematically, however, the Debtor did not miss an installment payment. The Debtor, rather, failed to pay the Note at maturity. And it is the next sentence of the document that governs the computation of the late charge in such an instance: "In the event the payment due is the balloon

5

payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to 10.00% of the original principal amount of this Note." *Id.*

There is a notable difference in the language of these two sentences. The first clause, which concerns only late installment payments, makes express reference to "10% of such installment," evidencing that the late charge is computed only based on the amount of the missed *payment*. The latter clause, however, governs a failure to pay the principal at maturity, and uses the alternative language of "10% of the original principal amount of this Note," showing the calculation is based not on the sum of the missed payment but, rather, the face value of the Note.

To be sure, if the Note were as the Debtor suggests, there would be no distinction between a missed installment and a missed maturity payment, as the Debtor would owe only 10% of the not timely paid (whether an installment or the whole principle). This would necessarily result in the latter sentence being surplusage, as the maturity payment would be deemed just another installment obligation, even if a large one at that. *See, e.g.*, *New England Power Co. v. FERC*, 571 F.2d 1213, 1225 (D.C. Cir. 1977) ("Redundancy in the construction of contracts is to be avoided if any other reasonable interpretation is possible.") (citing *Frank v. Volkswagenwerk*, 382 F.Supp. 1394, 1400 (E.D. Pa. 1974) (quoting *General Mills, Inc. v. Snavely*, 199 A.2d 540, 544 (Pa. Super. 1964))); *Wharf, Inc. v. Dist. of Columbia Wharf Horizontal Reit Leaseholder LLC*, 2021 WL 1198143, at *24 (D.D.C. 2021) ("Courts interpreting a contract shall 'strive to give reasonable effect to all its parts and eschew an interpretation that would render part of it meaningless or incompatible with the contract as a whole.'") (quoting *District of Columbia v. Young*, 39 A.3d 36, 40 (D.C. 2012)); *Doe v. George Washington Univ.*, 321 F. Supp. 3d 118, 127 (D.D.C. 2018) ("To ignore Article 34, as GW does, would render it surplusage, a result that is contrary to the rules of contract interpretation.") (citing *New England Power Co.*, 571 F.2d at 1225).

The words "10% of the original principal amount of this Note" are not ambiguous – the "principal amount" of the Note is, per the face of the instrument, $1,064,000.00, and "10% of" that sum is, undisputedly, $106,400.00. Equally, the provision is sensible on its face, not giving any indicia of a scrivener's error; the late charge for missing an installment payment – which will impact WCP only mildly – is 10% of the missed sum, but the late charge for missing the maturity payment – which denies WCP a return of the capital it has deployed – is 10% of the principal sum of the Note itself.

Nor is this charge an illegal "penalty under District of Columbia law," as the Debtor urges. Objection, DE #31, at ¶ 23. The District of Columbia Court of Appeals has made clear that liquidated damages provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract." This is because a liquidated damages clause serves "to simplify the resolution of a breach of contract dispute" by "giving the parties an opportunity to resolve the damages question without resorting to litigation" and by "fix[ing] the measure of damages at the outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 367 (D.C. 1984)).

Here, by the Debtor's failure to pay the loan at maturity, WCP was deprived of a return of its deployed capital. WCP is, quite familiarly, a private lender, that makes money by dispatching its capital into the marketplace. And in this regard, a failure to repay the whole of a sum borrowed at maturity is palpably more harmful to WCP than a failure to timely pay an installment obligation on that loan – hence the differentiated treatment in the plain text of the Note. This regime is consistent with the *Proulx* standard, innately sensible, and precisely what the parties bargained for when forming a commercial, arm's length agreement between corporate entities.

7

      **c. There is No Evidence of WCP Making Post-Petition Payments to Itself or Lacking the Resources to Fund the Construction Reserve**

Finally, the Debtor intimates that WCP (i) is charging interest post-petition; and (ii) did not have the monies to fund the construction draw. Objection, DE #31, at ¶¶ 24-25. There is simply no factual basis for these contentions and it is respectfully suggested no credible supporting evidence is likely to be adduced.

**V.    Conclusion**

WHEREFORE, WCP respectfully prays the Objection be overruled and for such other and further relief as may be just and proper.

Respectfully submitted,

Dated: September 28, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

**[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]**

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 28th day of September, 2023, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

Brent C. Strickland, Esq.
Whiteford Taylor & Preston
111 Rockville Pike
Suite 800
Rockville, Maryland 20850
bstrickland@wtplaw.com
*Counsel for the Debtor*

                /s/ Maurice B. VerStandig
                Maurice B. VerStandig