Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-131-ELG |
| | ) | (Chapter 11) |
| 5703 9TH, LLC | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION TO DEBTOR'S MOTION TO COMPEL DISCOVERY**

Comes now WCP Fund I LLC as servicer for U.S. Bank National Association, not in its individual capacity but solely as trustee of Homeward Opportunities Fund Trust 2020-BPL1 ("WCP"), by and through undersigned counsel, in opposition to the Debtor's Motion to Compel Discovery (the "Motion to Compel," as found at DE #54) filed by 5703 9th LLC (the "Debtor") and states as follows:

**I.     Introduction**

The Debtor seeks to compel WCP's production of documents in this case but, in so doing, has not engaged the merits of WCP's various objections and, more importantly, has not set out why the requested documents are relevant. As such, the Motion necessarily fails, as the Debtor not only comes well short of the procedural standard governing discovery motions in this circuit but, too, is in apparent pursuit of only sensitive materials that would not meaningfully advance the litigation of this matter. For these reasons, and as extrapolated upon *infra*, the Motion merits denial.

## II. Standard

As recently noted by the United States District Court for the District of Columbia, a motion to compel discovery implicates a burden-shifting standard:

> "When a party objects to a request for production of documents under Federal Rule of Civil Procedure 34(a)(1), the requesting party may move for an order compelling disclosure of the withheld material." The movant "bears the initial burden of explaining how the requested information is relevant." "The burden then shifts to the non-moving party to explain why discovery should not be permitted." "If a party has withheld documents on the grounds that they are privileged, the withholding party 'bears the burden of proving the communications are protected.'"

*S. Capitol Bridgebuilders v. Lexington Ins. Co.*, 2022 WL 444098, at *2 (D.D.C. 2022) (quoting *Felder v. Wash. Metro. Area Transit Auth.*, 153 F. Supp. 3d 221, 224 (D.D.C. 2015) (citing Fed. R. Civ. P. 37(a)); *Jewish War Veterans of the United States of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007); *Long v. Motion Picture Ass'n of Am.*, 2021 WL 5446278, at *2 (D.D.C. 2021) (quoting *Felder*, 153 F. Supp. 3d at 224)).

## III. Argument

### a. The Debtor Has Not Met Its Burden

As an initial matter, nowhere in the Motion may be found an explanation of "how the requested information is relevant." The Debtor has recited the barest outlines of this case and then, *ipso facto*, concluded that it is entitled to discovery of all documents sought. This is a facial violation of the *S. Capitol Bridgebuilders* standard and reason, unto itself, for the Motion to be denied.

Lest this argument appear to be the elevation of form over substance, there is a pragmatic issue instantly at play: WCP does not have any arguments to which to respond. The Debtor has not argued that Document A is relevant because of X, Y, or Z. And WCP thusly finds itself not even being made to defend against strawman arguments but, rather, needing to make a series of educated guesses at what arguments *might* exist, surmise if those are the arguments likely to be

2

advanced by the Debtor, and file a brief in opposition thereto. This is not merely a deviation from the well-established burden-shifting dynamic set forth *supra* but, too, a vivid exemplar of why that burden-shifting dynamic exists in the first place.

### b. Internal Communications are Not Relevant

While WCP does not know the theory upon which the Debtor maintains internal communications to be at issue,[1] it is quite clear these materials cannot be of any possible relevance *sub judice*. The Debtor is objecting to WCP's claim on the alternative theories that (i) WCP is not permitted to charge a late fee against the undrawn portion of a construction loan; (ii) WCP's late fee is an illegal liquidated damages provision; and (iii) WCP has some legally-colorable obligation to extend the maturity date of a promissory note. *See* Claim Objection, DE #31, *passim*. The Debtor has also intimated that it believes WCP may be continuing to collect interest payments, from an interest reserve, post-petition. None of these contentions beget the production of internal communications, let alone *all* internal communications.

Familiarly, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. And, as intimated by the burden-shifting dynamic set forth above, "[t]he proponent of the evidence bears the burden of establishing that the evidence is relevant."

---

[1] The Motion also makes reference to external communications. WCP has produced all of the external communications, with the Debtor and its affiliates, in WCP's files. The Debtor has intimated this production may not be as comprehensive as the records maintained by the Debtor; if so, such is merely a reminder that (i) the Debtor is apparently asking for records it already has, which seems an ill-informed decision when doing so only forces WCP to incur attorneys' fees that, in turn, are a part of the estate's secured obligation to WCP; and (ii) WCP does not generally keep e-mails and text messages in its loan files, requiring a case-specific search to be undertaken when such requests are received. Nonetheless, and for want of ambiguity, WCP did undertake a case-specific inquiry in this case, and did produce voluminous external communication records. No such records, excepting attorney/client communications, were withheld upon the completion of the inquiry.

*Banks v. Vilsack*, 958 F. Supp. 2d 78, 82 (D.D.C. 2013) (citing *Dowling v. United States*, 493 U.S. 342, 351 n. 3 (1990)).

Initially, whether or not WCP may charge a late fee on undrawn funds is a chiefly legal question, just as is the permissibility of a late fee under District of Columbia law. The loan documents may help inform that issue and, as such, WCP obediently produced its entire loan file in this case (to the tune of several hundred pages). But it is altogether unclear how internal communications could be relevant to these inquiries, as internal communications would not have any tendency to make a consequential "fact more or less probable than it would be without the evidence." The fee is either set forth in the loan documents and an enforceable component of an arm's length commercial agreement or the fee is not. There is simply no conceivable internal e-mail that could weigh on these questions in any relevant manner whatsoever.

Similarly, whether or not the Debtor is *per se* entitled to extend the maturity date is a purely legal question, even if a somewhat inane one in the prism of a business loan. The Debtor, critically, is *not* alleging WCP entered into a loan extension agreement or even committed to entering into such an agreement; the Debtor is alleging WCP indicated it would consider entering into such an agreement and then declined to do so. These allegations cannot be materially informed by internal communications; even if, purely hypothetically, there was an internal e-mail where WCP detailed

4

the reasons for not entering into a loan extension agreement, such would not inform any legal analysis of whether or not WCP was obligated to do so.[2]

This leaves only the question of whether WCP continued to use an interest reserve to make interest payments post-petition. This contention is, too, so facially problematic as to not be inviting of any meaningful relevancy analysis. There is no dispute in this case as to how much money WCP loaned the Debtor. Nor is there any dispute over what interest was due thereupon. Nor is there any dispute over the size of the interest reserve. And WCP has made clear, through its payoff statement and otherwise, that the interest reserve was wholly applied at the time of the loan defaulting and being accelerated (which occurred pre-petition). The payoff statement is appended to the proof of claim and is on the Debtor's own exhibit list for a trial of the Claim Objection.

Even so, though, if the Debtor wanted to argue that more money was somehow available, from some unknown source, and paid toward interest post-petition, it is not clear how internal communications would make such contention "more or less probable than it would be without the evidence." The Debtor could ask for any records of post-petition interest payments being made,

---

[2] This is a difficult argument to confront because, awkwardly, it is an argument that does not correlate to any cognizable legal theory or standard. The Debtor is suggesting WCP was obligated to change the due date on a promissory note. There does not appear to be any case law or statutory provisions that support this proposition. So there is a resulting oddity in endeavoring to assess what documents would be relevant to a question that cannot, as a matter of law, be answered in the affirmative. If the Claim Objection were a complaint, this would be resolved through a motion to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6). But since claim objections bypass that ordinary check on the sufficiency of pleadings, WCP is left in the peculiar position of assessing what evidence is relevant to an assertion that is not legally viable.

and WCP would not object to such a request but, equally, would respond with an unqualified answer that no such records exist because no such payments were made.[3]

### c. A Servicing Agreement is Not Relevant and is Highly Sensitive

Finally, the Debtor appears to be seeking "documents relating to the servicing agreement between WCP Fund I, LLC and U.S. Bank National Association." Motion, DE #54, at ¶ 11. There are three issues with this request: (i) no such agreement exists between WCP and U.S. Bank National Association ("US Bank"); (ii) any such agreement would not be relevant to the issues *sub judice*; and (iii) any such agreement would be so highly sensitive in nature as to be outside the permissive confines of discovery in this case.

Vis a vis the first point, WCP is not servicing the Debtor's loan for US Bank. WCP is servicing this loan for Homeward Opportunities Fund Trust 2020-BPL1 ("HOFT"). US Bank is simply a trustee of HOFT. This is, no doubt, a technical point. But it is a point meritorious of note nonetheless.

As to the second point, the same analysis applies as with internal communications. The provisions, *vel non*, of a servicing agreement cannot be of any possible – or even theoretical – relevance to the legal validity of a late fee, the existence of a legal duty to extend a maturity date, or the application of post-petition interest payments. These are all issues that will be determined by application of governing law to the loan documents and, in the instance of alleged post-petition interest payments, by examination of WCP's payoff statement and the fact that the loan was accelerated (with the interest reserve being then fully applied) pre-petition. No provision of a

---

[3] Discovery in this matter is now closed and this ought not be interpreted as an invitation for the Debtor to send WCP additional document requests or interrogatories. But WCP is comfortable asserting that if asked for all records of post-petition interest payments, WCP would respond by indicating no such records exist since no such payments have been made post-petition.

servicing agreement could impact any of these issues and, as such, a servicing agreement could not be relevant.

Third, a servicing agreement is a highly sensitive document, setting forth financial arrangements between a noteholder and a servicer, detailing how certain servicing decisions are to be made, and providing – ordinarily – for the management of a multitude of loans (as opposed to being for one specific loan). As observed by the United States District Court for the Eastern District of California:

> Under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: [ ] forbidding the disclosure or discovery; ... [ ] forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; ...[or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

*Yellowcake, Inc. v. Dashgo, Inc.*, 2022 WL 3226824, at *7 (E.D. Cal. 2022) (quoting Fed. R. Civ. P. 26(c)(1)).

WCP services a large number of loans in the Washington, DC area, and knowledge of a servicing agreement's terms could easily invite future manipulation by borrowers, could make public sensitive financial information, and could otherwise feed prurient interest. These are notable, demonstrable harms. And they are balanced against a Motion that does not so much as make an argument as to why such a document is relevant, with the Motion being in furtherance of discovery requests that, quite genuinely, do not appear to be seeking a servicing agreement in the first place. (The Debtor did ask, in a patently overbroad manner, for "*all* documents relating to the loan…" *See* DE #54-1 at p. 8, Document Request #4. While this could be construed as seeking the servicing agreement, because of the enormous overbreadth, this is also a fundamentally improper request because it could, equally, be construed as seeking all attorney/client communications "relating to the loan," all of WCP's tax returns showing income emanating from the loan, and

myriad other absurd things. WCP sincerely did not believe this request sought a servicing agreement because such a construction would be so absurd as to only reinforce the request's overbreadth and efforts to seek documents of no particular relevance.)

To be sure, it is altogether unclear how such an extraordinary discovery request can be allowable when there is no showing of relevance. But even if the Debtor were somehow to make a colorable argument concerning relevance (and it is not believed the Debtor could do so), WCP would ask such confidential information not be subjected to discovery. If this Honorable Court were to order otherwise, WCP would respectfully ask the servicing agreement (i) first be subject to *in camera* review, for assessment of relevance; and (ii) then, if found to be relevant, be produced on restricted "attorney's eyes only" terms, with an order providing for the document (a) to be produced in paper form, (b) for the document to be kept in a fire safe, (c) for no copies thereof to be made, and (d) for the sole produced copy to be either (I) returned to counsel for WCP, or (II) destroyed by cross-shredding and/or burning, as certified by the Debtor's counsel, upon the conclusion of this matter.

### IV.     Conclusion

The Debtor does not need internal communications and a servicing agreement to advance legally-invalid arguments, the Debtor has not met its burden of showing how any of the subject documents are relevant, and the Debtor most certainly has not met the extraordinary burden of showing why it should be given a highly sensitive, confidential servicing agreement. The Motion is simply not meritorious in nature, does not feign compliance with the governing legal standard, and should be accordingly denied.

WHEREFORE, WCP respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper. Solely to the extent this Honorable

Court is inclined to order production of the servicing agreement, WCP equally prays (iii) such production be first made *in camera* and then, if and only if the document is deemed relevant, be subject to a restricted production on the terms outlined above.

Respectfully submitted,

Dated: December 14, 2023

By: /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for WCP Fund I LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 14th day of December, 2023, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to:

Brent C. Strickland, Esq.
Whiteford Taylor & Preston
111 Rockville Pike
Suite 800
Rockville, Maryland 20850
bstrickland@wtplaw.com
*Counsel for the Debtor*

/s/ Maurice B. VerStandig
Maurice B. VerStandig

9