**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |
|---|---|
| ) | Chapter 11 |
| In re: ) | |
| ) | Case No. 23-00131-ELG |
| 5703 9TH, LLC, ) | |
| ) | |
| Debtor. ) | |
| ) | |
| ) | |

---

## AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE FOR DEBTOR'S PLAN OF REORGANIZATION

5703 9th, LLC (the "Debtor" or "5703 9th"), the debtor and debtor-in-possession herein, by counsel, hereby submits this Amended Disclosure Statement (the "Disclosure Statement") pursuant to § 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") to all holders of Claims against or Interests in the Debtor, as a prerequisite to soliciting acceptances to the Debtor's Plan of Reorganization (the "Plan"), which has been filed by the Debtor with the Clerk of the United States Bankruptcy Court for the District of Columbia.

WHITEFORD, TAYLOR & PRESTON L.L.P.
Brent C. Strickland, Bar No. 452880
111 Rockville Pike, Suite 800
Rockville, Maryland 20850
Phone: (410) 347-9402
Fax: (410) 223-4302
Email: bstrickland@whitefordlaw.com

*Counsel for the Debtor*

## <u>TABLE OF CONTENTS</u>

Page

I.      Introduction ............................................................................      1

II.     History and Background...........................................................      5

III.    Events Leading to the Debtor's Chapter 11 Petition..............................      6

IV.     Bankruptcy Proceedings…………………….........................................      6

V.      Plan of Reorganization……....................................................      7

VI.     Liquidation Analysis Under Chapter 7.......................................      29

VII.    Avoidance Actions................................................................      29

VIII.   Tax Consequences to Creditors ..............................................      30

IX.     Voting on the Plan and Acceptance.......................................      31

X.      Risk Factors ........................................................................      31

## I.    <u>INTRODUCTION</u>

The purpose of this Disclosure Statement[1] is to furnish information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor typical of the holders of Claims against or Interests in the Debtor to make an informed judgment about whether to accept or reject the Debtor's Plan filed in this bankruptcy case (the "<u>Bankruptcy Case</u>"). The Debtor believes that this Disclosure Statement contains "adequate information," as that term is defined in § 1125(a)(1) of the Bankruptcy Code, for holders of Claims against or Interests in the Debtor as required by § 1125 of the Bankruptcy Code. The transmittal of this Disclosure Statement does not represent, and should not be interpreted as being, the Bankruptcy Court's recommendation to either accept or reject the Plan.

### <u>Definitions</u>

Unless otherwise defined herein, the capitalized terms used in this Disclosure Statement shall be defined as set forth in the Debtor's Plan.

### <u>List of Enclosures</u>

Also accompanying the Disclosure Statement are the following documents (the "<u>Enclosures</u>"), each of which is incorporated by reference:

**Enclosure 1:**  The Plan

**Enclosure 2:**  Order Approving Disclosure Statement, Setting Hearing on Confirmation of Plan, and Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Notice Thereof

---

[1] The term "Disclosure Statement" as used herein shall encompass all exhibits annexed hereto as well as the  Disclosure Statement document itself.

**<u>Availability of Other Information</u>**

The entire Court file on this Bankruptcy Case is available for review at the Office of the Clerk, United States Bankruptcy Court for the District of Columbia, 333 Constitution Avenue, NW, Suite 1225, Washington, D.C. 20001, during the Bankruptcy Court's regular business hours. Additionally, certain items may be available online through the PACER website: Court's Pacer website: http://ecf.dcb.uscourts.gov. Persons with questions about the Plan or this Disclosure Statement may contact the Debtor's counsel as follows:

- Brent C. Strickland (bstrickland@whitefordlaw.com or 410-347-8700)

**<u>Voting, Disclaimer, and Supremacy of Plan Provisions</u>**

As a result of not having any impaired classes under the terms of the Plan, each class of creditors is deemed to have accepted the Plan and Creditors are not entitled to vote for the acceptance or rejection of the Plan. *See* 11 U.S.C. 1129(a)(8).

APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.

THE PLAN AND THIS DISCLOSURE STATEMENT ARE NOT REQUIRED TO BE AND HAVE NOT BEEN PREPARED IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NONBANKRUPTCY LAW. NONE OF THE SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSION, OR SIMILAR PUBLIC, GOVERNMENTAL, OR REGULATORY AUTHORITY HAS APPROVED THIS DISCLOSURE STATEMENT, THE PLAN, OR ANY SECURITIES OFFERED UNDER THE PLAN, OR HAS PASSED ON THE ACCURACY OR

ADEQUACY OF THE STATEMENTS IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

NO REPRESENTATION CONCERNING THE DEBTOR, THE DEBTOR'S BUSINESS OPERATIONS, THE VALUE OF THE DEBTOR'S PROPERTY, OR THE PLAN ARE AUTHORIZED BY THE DEBTOR UNLESS SET FORTH IN THIS DISCLOSURE STATEMENT. ACCORDINGLY, NO REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OF THE PLAN, OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT, SHOULD BE RELIED UPON IN EXERCISING THE RIGHT TO VOTE OR NOT TO VOTE ON THE ACCEPTANCE OF THE PLAN AND ANY SUCH REPRESENTATION OR INDUCEMENT SHOULD BE REPORTED IMMEDIATELY TO COUNSEL FOR THE DEBTOR.

THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ATTACHED THERETO, AND THE AGREEMENTS AND DOCUMENTS DESCRIBED THEREIN. IF THERE IS A CONFLICT BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE PROVISIONS OF THE PLAN WILL GOVERN. YOU ARE ENCOURAGED TO REVIEW THE FULL TEXT OF THE PLAN AND TO READ CAREFULLY THE ENTIRE DISCLOSURE STATEMENT, INCLUDING ALL EXHIBITS, BEFORE DECIDING HOW TO VOTE WITH RESPECT TO THE PLAN.

THE FINANCIAL INFORMATION SUBMITTED WITH THE DISCLOSURE STATEMENT AND PLAN HAS NOT BEEN SUBJECT TO AUDIT AND ANY ESTIMATES OF CLAIMS OR INTERESTS IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE FINAL AMOUNTS OF CLAIMS OR INTERESTS ALLOWED BY THE

3

BANKRUPTCY COURT. FURTHER, ANY ESTIMATES OF RECOVERIES IN THIS DISCLOSURE STATEMENT MAY VARY FROM RECOVERIES ACTUALLY RECEIVED.

THE DEBTOR BELIEVES THAT THE PLAN IS IN THE BEST INTEREST OF ALL CREDITORS. THE PLAN AND DISCLOSURE STATEMENT ARE COMPLEX INSOFAR AS THEY CONSTITUTE A LEGALLY BINDING COMMITMENT BETWEEN THE CREDITORS AND THE DEBTOR. ACCORDINGLY, CREDITORS AND PARTIES-IN-INTEREST ARE URGED TO SEEK LEGAL COUNSEL IF UNSURE OF THE EFFECT OF THE PLAN AND DISCLOSURE STATEMENT.

THE ABSENCE OF PENDING OBJECTIONS TO CLAIMS OR PENDING AVOIDANCE ACTIONS OR THE ABSENCE OF AN INDICATION HEREIN OF POTENTIAL OBJECTIONS TO CLAIMS OR AVOIDANCE ACTIONS SHALL NOT SERVE AS A WAIVER OF SUCH RIGHTS, AND ALL CREDITORS AND PARTIES-IN-INTEREST ARE HEREBY EXPRESSLY ON NOTICE THAT THEY SHOULD NOT RELY ON THE DISCLOSURE STATEMENT OR ABSENCE OF NOTICE OF AN OBJECTION OR POSSIBLE AVOIDANCE ACTION UNDER SECTIONS 542-550 OF THE BANKRUPTCY CODE AS A DEFENSE TO SUCH FUTURE OBJECTION OR AVOIDANCE ACTION.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THE DISCLOSURE STATEMENT IS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS AND SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER.

THE DESCRIPTION OF THE PLAN IN THE DISCLOSURE STATEMENT IS A SUMMARY ONLY, AND CREDITORS AND OTHER PARTIES-IN-INTEREST ARE

URGED TO REVIEW THIS ENTIRE DISCLOSURE STATEMENT AND ITS EXHIBITS, THE DETAILED DESCRIPTION OF THE PLAN CONTAINED HEREIN, AND THE PLAN ITSELF, WHICH IS ANNEXED HERETO AS <u>ENCLOSURE 1</u>, FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS.

## II.   <u>HISTORY AND BACKGROUND</u>

The Debtor is a limited liability company formed under the laws of the District of Columbia on October 27, 2021. The original members of the Debtor were siblings Natalie Denise Bell, Reginald Sanford Bell, and Nicola Regina Bell (collectively, the "<u>Bell Family</u>").

The Bell Family inherited the single-family residential property located at 5703 9th Street, NW, Washington D.C. (the "<u>Property</u>") when their parents passed away.

The Bell Family determined that the value of the Property could be maximized if the Property could be remodeled into a two-unit residential condominium property (the "<u>Project</u>").

In order to proceed with the renovation, the Bell Family entered into a Developer Services Agreement with 5703 9th Manager, LLC (the "<u>Developer</u>"), whereby Developer would assume all of the administrative and management tasks necessary for the completion of the Project.

In order to finance the project, the Debtor entered into a loan transaction with WCP Fund I, LLC as servicer for U.S. Bank National Association ("<u>WCP</u>") pursuant to a certain note executed by the Debtor (the "<u>Note</u>"). WCP has a security interest in the Property pursuant to various loan documents (collectively, the "<u>WCP Loan Documents</u>") to secure the Note.

The Debtor expects to refinance the Property and use the loan proceeds to satisfy the WCP Secured Claim. If the Debtor is unable to obtain refinance the Property within ninety (90) days from the Confirmation Date, the Debtor shall seek to sell the Property and use the sale

proceeds to fund the Plan.

## III.    EVENTS LEADING TO THE DEBTOR'S CHAPTER 11 PETITION

After the WCP loan closing, the Developer proceeded with the demolition phase of the Project and undertook to obtain all necessary permits from the District of Columbia. The permits were required for the construction phase of the Project after the demolition phase was completed.

The permitting process in the District of Columbia was extremely slow, rendering it impossible for the Developer to complete the Project by the loan maturity date of January 19, 2023. WCP refused to extend the maturity date of the loan, issued a Notice of Default, and scheduled the Property for foreclosure, necessitating the filing of the Bankruptcy Case.

## IV.    BANKRUPTCY PROCEEDINGS

### The Petition for Relief

On May 16, 2023, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is authorized to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

### The Employment of Professionals by the Debtor

On May 23, 2023, the Debtor filed the *Debtor's Application for Authority to Employ Whiteford, Taylor & Preston L.L.P. as Attorneys for the Debtor and Debtor-in-Possession* [Docket No. 11] (the "Whiteford Application").

On June 5, 2023, the Court entered an order (the "Whiteford Employment Order") approving the employment of Whiteford as counsel to the Debtor. *See* Docket No. 21.

### The Avoidance Actions

The Debtor does not intend to investigate or pursue any potential Avoidance Actions because the Debtor expects to otherwise be able to pay all Creditors in full and because the Debtor does not believe that any such claims exist.

## V.      PLAN OF REORGANIZATION

### Summary

The Debtor believes that the Plan will allow it to reorganize or, alternatively, to sell the Property and make prompt distributions to creditors. The Plan will result in Creditors receiving a recovery on equal or more favorable terms than if the Debtor's assets were liquidated under Chapter 7 of the Bankruptcy Code and distributed in accordance with the statutory scheme of priorities contained in the Bankruptcy Code, and a recovery by holders of Interests in the Debtor.

THE FOLLOWING IS A SUMMARY OF THE SIGNIFICANT ELEMENTS OF THE PLAN. THIS SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN, AND THE DEBTOR STRONGLY URGES YOU TO READ THE PLAN IN ITS ENTIRETY.

### Provision for Payment of Administrative Claims, Priority Claims, and Priority Tax Claims

Allowed Administrative Expense Claims:  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, holders of Allowed Administrative Expense Claims will receive Cash equal to the unpaid portion of such Allowed Administrative Expense Claim on the later of (a) the Effective Date, (b) the first Business Day that is ten (10) days following entry of a Final Order allowing such Administrative Expense Claim, or (c) such date as such entity may agree to with the Debtor, provided however that Administrative Expense Claims representing liabilities incurred in the ordinary course of

7

business by the Debtor, as debtor-in-possession, or liabilities arising under other obligations incurred by the Debtor, as debtor-in-possession, whether or not incurred in the ordinary course of business, shall be paid by the Reorganized Debtor in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such transactions. Notwithstanding § 503(a) of the Bankruptcy Code, any person seeking payment of an Administrative Expense Claim under § 503 of the Bankruptcy Code that was incurred on or before the Effective Date, but which has not been paid by the Debtor, shall be required to file an application for the allowance of final payment of said Claim on or before sixty (60) days after the Effective Date, and any such Claim not filed by that date shall be forever barred and discharged. Objections to any such application shall be filed within thirty (30) days after the filing of the application. Notwithstanding the foregoing, Professional Persons with Administrative Expense Claims shall comply with the provisions of Article 6.7 of the Plan.

Allowed Priority Claims.  The holders of Allowed Priority Claims will receive Cash equal to the unpaid portion of such Allowed Priority Claim, on the later of (a) the Effective Date, (b) the first Business Day that is ten (10) days following entry of a Final Order allowing such Administrative Expense Claim, or (c) such date as such entity may agree to with the Debtor.

Allowed Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, at the sole option of the Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Tax Claim: (a) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the

date such Priority Tax Claim becomes an Allowed Priority Tax Claim or (b) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate, which is consistent with applicable laws or as set by order of the Bankruptcy Court, over a period not exceeding five (5) years after the Petition Date, which shall begin on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim. Notwithstanding the foregoing, payment terms for Allowed Priority Tax Claims shall not be less favorable than the treatment of General Unsecured Claims. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

## Designation of Classes of Claims and Interests

For purposes of the Plan, Claims and Interests are classified as follows:

"Class 1 Claim" shall consist of the Secured Claim of the District of Columbia Office of Tax and Revenue, Real Property Tax Administration.

"Class 2 Claim" shall consist of the Secured Claim of WCP.

"Class 3 Claims" shall consist of the General Unsecured Claims.

"Class 4 Interests" shall consist of any Interests held in the Debtor, including, without limitation, any and all issued and outstanding membership interests in the Debtor.

## Treatment of Claims and Interests under the Plan

Claims and Interests shall receive the following treatment under the Plan:

Class 1 Claim (District of Columbia Office of Tax and Revenue, Real Property Tax Administration). Class 1 is unimpaired by the Plan. In full and complete satisfaction, discharge,

and release of the Class 1 Claim, the holder of the Class 1 Claim shall receive Cash equal to one hundred percent (100%) of its Allowed Secured Claim plus interest as provided by applicable law, paid pursuant to the Plan from a loan refinancing the Property or at closing on the sale of the Property. The holder of the Class 1 Claim shall continue to retain its lien on and security interest in, if any, the Property until closing on the sale of the Property, at which time the Allowed Class 1 Claim will be paid in full, or when the Class 1 claim is otherwise paid in full from the loan proceeds of the refinancing of the Property.

Class 2 Claim (WCP Secured Claim).  Class 2 is unimpaired by the Plan. In full and complete satisfaction, discharge, and release of the Class 2 Claim, the holder of the Class 2 Claim shall receive payment of its Allowed Secured Claim pursuant to the Consent Order resolving the Debtor's objection to the proof of claim filed by the Class 2 holder, , paid from a loan refinancing the Property or at closing on the sale of the Property. The holder of the Class 2 Claim shall continue to retain its lien on and security interest in, if any, the Property until the Allowed Class 2 Claim is paid.

Class 3 Claims (General Unsecured Claims).  Class 3 is unimpaired by the Plan. In full and complete satisfaction, discharge, and release of the Class 3 Claims, the holders of the Class 3 Claims shall receive cash equal to one hundred percent (100%) of their Allowed Claims, plus interest at the federal judgment rate in effect as of the Petition Date from the later of the Petition Date or the date that the Claim became liquidated through the date on which the Claim is paid in full, paid pursuant to the Plan. Allowed Class 3 Claims shall be paid on the Effective Date. If a Class 3 Claim becomes an Allowed Claim after the Effective Date, such Allowed Class 3 Claim will be paid on or before ten (10) business days after the claim is Allowed.

Class 4 Interests (5703 9th Membership Interests).  Class 4 is unimpaired by the Plan. The holders of the Class 4 Interests shall retain all of their ownership interest in the Reorganized Debtor. Upon the payment in full of all Allowed Class 3 Claims, any remaining Cash on hand may be distributed by the Reorganized Debtor in its sole discretion.

## Means of Execution of the Plan

Authority of Reorganized Debtor.  By confirmation of the Plan, the Reorganized Debtor is authorized to take all actions and execute all documents necessary to carry out its duties under the Plan. In carrying out such duties, the Reorganized Debtor shall comply with all applicable laws.

Rights, Duties, and Obligations of Reorganized Debtor.  On the Effective Date, the Reorganized Debtor alone shall have the following rights, duties, and obligations, *inter alia*:

a.    to use, sell, or lease any or all of the property of the Estate;

b.    to distribute funds to holders of Allowed Claims and Allowed Interests consistent with the terms of the Plan;

c.    to maintain the Distribution Account created pursuant to the Plan;

d.    to file a final report and move to close the Debtor's Chapter 11 Case; and

e.    any other duties of a debtor consistent with the Bankruptcy Code, payment to holders of Claims, and to implement the Plan.

Claim Objections.  The Debtor and, after the Effective Date, the Reorganized Debtor shall have the right, duty, and obligation to review the Debtor's Schedules and any Claims or Interests filed in this Chapter 11 Case and to object to any such Claims or Interests on or before one hundred eighty (180) days after the Bar Date or Government Bar Date, as applicable.

Refinancing of WCP Debt.  The Debtor may seek  obtain a loan, secured by the Property, the proceeds of which shall be used to satisfy the Class 1 Claim and the Class 2 Claim

Sale of Assets.  As an alternative to a refinance loan, the Debtor may seek to sell the Property.  The sale of the Property pursuant to this Plan in all respects shall be deemed a sale pursuant to  §§ 105 and 363 of the Bankruptcy Code and an assumption and assignment of executory contracts and unexpired leases pursuant to § 365 of the Bankruptcy Code, if any, in accordance with and under the provisions of § 1123 of the Bankruptcy Code, as provided for in this Plan, confirmed pursuant to § 1129 of the Bankruptcy Code, effectuated pursuant to § 1141 of the Bankruptcy Code, and in accordance with § 1146 of the Bankruptcy Code, to sell the Property free and clear of all liens. If a person who (i) asserts a lien with respect to the Property or (ii) is a party to an Assumed Executory Contract or Unexpired Lease does not object to this Plan, such person shall be deemed to have consented to the sale of such Property free and clear of such person's asserted lien, to the assignment of any such Assumed Executory Contract or Unexpired Lease, including the Debtor's proposed cure amount relating to the assumption and assignment of any executory contract or unexpired lease, and to have consented to the treatment provided for such person under this Plan.

Vesting of Assets.  In the event the Debtor is successful in obtaining a loan to refinance the Property, on the Effective Date, by virtue of the Confirmation of this Plan, the Estate Assets, including the Property, shall vest in the Reorganized Debtor, free and clear of all liens, claims, or encumbrances except as set forth in this Plan.

Plan Funding.  The sources for funding of this Plan shall include, but shall not be limited to, the refinancing of the WCP Secured Claim and/or the sale of the Property.

Transfer of Property.  Holders of Claims and Interest holders shall be paid in accordance with their priorities set forth in the Bankruptcy Code and the terms set forth in this Plan. Upon confirmation of this Plan, the Debtor shall be designated pursuant to § 1142(b) of the Bankruptcy Code to execute or deliver any instrument required to effect a transfer of any property dealt with by this Plan and to perform any act that is necessary for the consummation of this Plan.

## Provisions Governing Distributions

Distributions. Commencing on the Effective Date, the Reorganized Debtor shall make payments, in Cash, to the holders of all Allowed Claims and Interests in accordance with the terms and conditions of the Plan. The Reorganized Debtor may pre-pay, in full or in parts, any payments under the Plan without penalty. The Reorganized Debtor shall act as disbursing agent for the purpose of making those distributions provided under the Plan.

Distributions of Cash.  At the option of the Reorganized Debtor, any Cash payment to be made by the Reorganized Debtor pursuant to the Plan may be made by check drawn on a domestic bank or by wire transfer.

Delivery of Distributions and Undeliverable Distributions.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the proofs of Claim filed by such holders or other writing notifying the Debtor (or, after the Effective Date, the Reorganized Debtor) of a change of address. If any holder's distribution is returned as undeliverable, the holder of any such Claim or Interest shall not be entitled to any other or further distribution under the Plan on account of such Claim or Interest unless the Debtor is notified of a new address within thirty (30) days of the Debtor's receipt of such returned distribution.

13

_Withholding and Reporting Requirements_.   In connection with the Plan and all documents executed in connection therewith and distributed thereon, the Reorganized Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

_Time Bar to Cash Payments_.  Checks issued by the Reorganized Debtor in respect of Allowed Claims or Interests shall be null and void if not negotiated within forty-five (45) days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Reorganized Debtor by the holder of the Allowed Claim or Interest to whom such check originally was issued. On the last distribution date, all distributions for which checks were not requested to be reissued shall be used to satisfy the costs of administering and fully consummating the Plan, and the holder of any such Claim or Interest shall not be entitled to any other or further distribution under the Plan on account of such Claim or Interest.

_Setoffs_.  The Reorganized Debtor may, in accordance with § 553 of the Bankruptcy Code and applicable non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Claim (before any distribution is made on account of such Claim) the claims, rights, and causes of action of any nature that the Debtor or the Reorganized Debtor may hold against the holder of such Allowed Claim; _provided_, _however_, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Debtor-in-Possession, or the Reorganized Debtor of any such claims, rights, and causes of action that the Debtor, the Debtor-in-Possession, or the Reorganized Debtor may possess against such holder; and _provided further_, _however_, that any claims of the Debtor arising before the Petition Date shall first be set off against Claims

against the Debtor arising before the Petition Date. Unless otherwise stipulated in writing by the Debtor, or asserted pursuant to a timely filed Proof of Claim, any party against whom a claim or counterclaim is asserted by the Estate must assert or must have asserted any setoff rights, right of subrogation, or recoupment of any kind against such claim at the time it answers such claim, or such right of setoff, subrogation, or recoupment will be deemed waived and forever barred. Notwithstanding the foregoing, nothing herein shall affect the setoff rights of any taxing authority.

Professional Persons with Administrative Expense Claims. Notwithstanding § 503(a) of the Bankruptcy Code, each Professional Person or firm retained with approval by order of the Bankruptcy Court requesting compensation in this Chapter 11 Case pursuant to §§ 330 or 503(b) of the Bankruptcy Code for any fees for services rendered or reimbursement of expenses incurred on or before the Effective Date shall be required to file an application for the allowance of final payment of said fees and expenses on or before sixty (60) days after the Effective Date, and any such claim not filed by that date shall be forever barred and discharged. Objections to any such application shall be filed within thirty (30) days after the filing of the application. Each Secured Creditor seeking payment or reimbursement of fees for services rendered by a Professional Person in respect of this Chapter 11 Case and pursuant to § 506(b) of the Bankruptcy Code shall be required to file an application for the allowance of final payment of said fees within thirty (30) days of its receipt of notice from the Debtor that the Debtor believes such fees to be unreasonable. In the event that the Debtor determines that such Professional Person's fees, incurred by a Secured Creditor and requested in accordance with § 506(b) of the Bankruptcy Code, are not reasonable, the Debtor shall place such disputed funds into the

15

Distribution Account upon Closing, pending the Bankruptcy Court's entry of a Final Order resolving the allowance or disallowance of such fees.

Retention of Professionals After the Effective Date.  From and after the occurrence of the Effective Date, the Reorganized Debtor may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist him in fulfilling his obligations under the Plan, and on whatever fee arrangement he deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements. Professionals engaged by the Reorganized Debtor shall not be required to file applications for compensation in order to receive the compensation provided for herein. The Reorganized Debtor may pay any fees and expenses of its professionals incurred after the Effective Date without further order of the Bankruptcy Court.

Transactions on Business Days.  If the date on which a transaction is scheduled to occur under the Plan falls on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day may instead occur on said day or the next Business Day.

### Procedures for Resolving and Treating
### Disputed Claims and Interests

No Distribution Pending Allowance.  Notwithstanding any other provision of the Plan, the Reorganized Debtor is not required to distribute Cash or other property under the Plan on account of any Disputed Claim or Interest, unless and until such Claim or Interest becomes an Allowed Claim or Interest. The Reorganized Debtor may, in its sole discretion, pay any undisputed portion of a Disputed Claim.

Resolution of Disputed Claims or Interests.  The Debtor and, on the Effective Date, Reorganized Debtor shall have the right to make and file objections to Claims or Interests and shall serve a copy of each objection upon the holder of the Claim or Interest to which the

objection is made as soon as practicable, but in no event later than one hundred eighty (180) days after the Bar Date or Government Bar Date, whichever is applicable. From and after the Confirmation Date, all objections shall be litigated to a Final Order except to the extent the Reorganized Debtor elects to withdraw any such objection or the Reorganized Debtor and the claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Interest without the approval or order of the Bankruptcy Court.

Estimation.  The Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim or Interest pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Reorganized Debtor or the Debtor has previously objected to such Claim or Interest, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim or Interest at any time, including during litigation concerning any objection to such Claim or Interest. In the event that the Bankruptcy Court estimates any Disputed Claim or Interest, that estimated amount may constitute either the Allowed amount of such Claim or Interest or a maximum limitation on such Claim or Interest, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claims or Interests, the Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim or Interest. All of the aforementioned Claims or Interests objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Confirmation Date, Claims or Interests which have been estimated subsequently may be compromised, settled, withdrawn, or otherwise resolved without the approval or order of the Bankruptcy Court.

<u>Allowance of Disputed Claims</u>.  If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Reorganized Debtor shall, on or before the first Business Day after the date that is thirty (30) calendar days the Claim becomes an Allowed Claim (if disputed), distribute to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date.

**Treatment of Executory
<u>Contracts and Unexpired Leases</u>**

<u>Executory Contracts and Unexpired Leases</u>.  On the Effective Date, all executory contracts and unexpired leases that exist between the Reorganized Debtor and any person shall be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease that (i) is the subject of motions to assume or reject pending on the Confirmation Date; (ii) was assumed or rejected before the Confirmation Date; (iii) is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases attached to the Plan as <u>Exhibit A</u>; or (iv) becomes the subject of a dispute over the amount or manner of cure.

<u>Approval of Assumption or Rejection</u>.  Entry of the Confirmation Order as of the Effective Date shall constitute: (i) the approval, pursuant to § 365(a) of the Bankruptcy Code, of the assumption by the Reorganized Debtor of the executory contracts and unexpired leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases; and (ii) the approval, pursuant to § 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan or otherwise during the Chapter 11 Case. Notwithstanding anything contained herein to the contrary, up to the Confirmation Date, the Debtor shall have the right to add to or delete from the Schedule of Assumed Executory

Contracts and Unexpired Leases any executory contract or unexpired lease. The Schedule of Assumed Executory Contracts and Unexpired Leases is attached to the Plan as <u>Exhibit A</u>.

<u>Cure of Defaults</u>. The Reorganized Debtor shall cure any defaults respecting each executory contract or unexpired lease assumed pursuant to Article VIII of the Plan upon the latest of: (i) the Effective Date or as soon thereafter as practicable; (ii) such dates as may be fixed by the Bankruptcy Court or agreed upon by the parties, or as soon thereafter as practicable; or (iii) the first Business Day that is ten (10) days following entry of a Final Order resolving any dispute regarding (a) a cure amount, (b) the ability of the Reorganized Debtor to provide "adequate assurance of future performance" under the executory contract or unexpired lease assumed pursuant to the Plan in accordance with § 365(b)(l) of the Bankruptcy Code, or (c) any matter pertaining to assumption or the cure of a particular executory contract or an unexpired lease. The Schedule of Assumed Executory Contracts and Unexpired Leases sets forth the Debtor's proposed cure amounts for each of the Assumed Executory Contracts and Unexpired Leases.

<u>Objection to Proposed Cure Amount</u>.  Non-Debtor parties to the Assumed Executory Contracts and Unexpired Leases listed on the Schedule of Assumed Executory Contracts and Unexpired Leases, attached to the Plan as <u>Exhibit A</u>, that disagree with the Debtor's proposed cure amount set forth on <u>Exhibit A</u>, shall file an objection to the Plan by the Plan Objection Deadline. If a non-Debtor party to an Assumed Executory Contract or Unexpired Lease fails to file an objection to the Plan by the Plan Objection Deadline, such non-Debtor party shall be deemed to consent to the Debtor's assumption and to the Debtor's proposed cure amount and shall be forever barred from objecting thereto.

Bar Date. All proofs of Claim with respect to Claims arising from the rejection of any executory contract or unexpired lease shall be filed with the Bankruptcy Court no later than thirty (30) days after the entry of the Confirmation Order. Any Claim not filed within such time shall be forever barred.

## Effectiveness of the Plan

Conditions Precedent to the Effective Date. The following are conditions precedent to the Effective Date of the Plan:

(a)      The Bankruptcy Court shall have entered an order confirming the Plan in form and substance satisfactory to the Debtor; and

(b)      All documents, instruments, and agreements, in form and substance satisfactory to the Debtor, provided for under or necessary to implement the Plan, shall have been executed and delivered by the parties thereto, unless such execution or delivery has been waived by the parties benefited thereby.

Within fourteen (14) days after the occurrence of the Effective Date, the Reorganized Debtor shall file a pleading entitled "Certification of Occurrence of Effective Date" with the Court in which it shall state the date upon which the Effective Date occurred. The Debtor or the Reorganized Debtor, in their sole discretion, may waive any and all conditions precedent to the Effective Date occurring other than the effectiveness of the order confirming the Plan.

## Effect of Confirmation

Release of Assets.   Until the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Debtor and the Estate Assets. Thereafter, jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Article XI of the Plan, and the Reorganized Debtor shall perform its affairs as provided in the Plan.

Binding Effect.  Except as otherwise provided in § 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor and its respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

Term of Injunctions or Stays.   Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Case pursuant to § 105 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until all obligations of the Reorganized Debtor under the Plan have been performed and the Chapter 11 Case has been closed.

Discharge.  Except as otherwise provided in the Plan or the Confirmation Order, effective on the Effective Date, the Plan shall discharge and terminate all liability for any debt of or Claim against the Debtor that arose before the Effective Date, and any debt or claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not:

(a)      a proof of Claim based on such debt or Claim was filed, or deemed filed, under § 501 of the Bankruptcy Code;

(b)      such Claims are Allowed or Disallowed under § 502 of the Bankruptcy Code;

(c)      such Claim was properly scheduled, if such claim holder had notice of this Chapter 11 Case before the Effective Date; or

(d)      the holder of such Claim has accepted or rejected the Plan.

Release and Injunction.  On the Effective Date, the Debtor, in its individual capacity and as a debtor-in-possession, for and on behalf of itself, the Estate, and the Reorganized Debtor,

hereby releases and discharges, absolutely, unconditionally, irrevocably, and forever the following (collectively, the "Released Claims"): (a) any and all Causes of Action that the Debtor has against any current or former officer, director, member, attorney, or agent of the Debtor (each a "Representative"), solely in their capacity as such, from any Claim or Cause of Action (i) arising from the beginning of time through the Confirmation Date related to acts or omissions to act (including, but not limited to, any Claims or Causes of Action arising out of any alleged fiduciary or other duty), or (ii) which might at any time after the Confirmation Date arise out of or relate, directly or indirectly, to any pre-Confirmation Date acts or omissions; and (b) any and all Causes of Action that the Debtor has against any Representative arising from or related to such Representative's acts or omissions to act in the Chapter 11 Case, except that Representatives shall not be released from any liability relating to acts or omissions to act of gross negligence or willful misconduct. To the fullest extent permitted by applicable law, each holder of a Claim (whether or not Allowed) against or Interest in the Debtor, the Estate, or the Reorganized Debtor shall be enjoined from commencing or continuing any action regarding the Released Claims, including the employment of process or any act to collect, offset, or recover such Released Claims, and shall be deemed to release any derivative actions regarding any of the Released Claims. Nothing herein impacts, limits, or otherwise restricts any rights that any entity has to pursue any Causes of Action not constituting or derivative of Released Claims.

## Retention of Jurisdiction

Jurisdiction of Bankruptcy Court.   The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Case and the Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

22

(a)      To hear and determine any motions for the assumption or rejection of executory contracts or unexpired leases, and the allowance of any rejection Claims resulting therefrom;

(b)      To determine any and all pending adversary proceedings, applications, and contested matters;

(c)      To determine any and all of the Avoidance Actions;

(d)      To hear and determine any objection to any Claims or Interests;

(e)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)      To issue such orders in aid of execution of the Plan to the extent authorized by § 1142 of the Bankruptcy Code;

(g)      To consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(h)      To hear and determine all applications for compensation and reimbursement of expenses of professionals under §§ 330, 331, and 503(b) of the Bankruptcy Code;

(i)      To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)      To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any

transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)      To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of the Plan following consummation;

(l)      To recover all assets of the Debtor and property of the Estate, wherever located;

(m)      To hear and determine matters concerning state, local, and federal taxes in accordance with §§ 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under § 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the last distribution date);

(n)      To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code, title 28 of the United States Code, and other applicable law;

(o)      To enter a final decree closing the Chapter 11 Case; and

(p)      To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

### Acceptance or Rejection of the Plan

Voting of Claims.   There are no impaired classes under the terms of the Plan and as a result, each class of creditors is deemed to have accepted the Plan. *See* 11 U.S.C. 1129(a)(8).

### Miscellaneous Provisions

Effectuating Documents and Further Transactions.  The Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions on behalf of the Reorganized Debtor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Payment of U.S. Trustee Fees.  All outstanding U.S. Trustee Fees, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on or before the Effective Date. Any U.S. Trustee Fees accruing after the Confirmation Date shall be paid by the Reorganized Debtor.

Exemption from Transfer Taxes.  Pursuant to § 1146(a) of the Bankruptcy Code: (i) the issuance, distribution, transfer, or exchange of Interests or other Estate property; (ii) the creation, modification, consolidation, or recording of any deed of trust or other security interest, and the securing of additional indebtedness by such means or by other means in furtherance of or in connection with this Plan, the Confirmation Order, and any related documents; (iii) the making, assignment, modification, or recording of any lease or sublease; (iv) the sale or transfer of assets, including, without limitation, the Property, and (v) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, any related documents, or any transaction contemplated above, or any transactions arising out of, contemplated by, or in any way related to the foregoing, including, without limitation, the Property, shall be deemed exempt from all taxes arising from such sale or transfer which would otherwise be imposed at the time of transfer or sale, which are determined by consideration for or value of the property being transferred or as a percentage thereof, including taxes imposed by the District of Columbia or other applicable law, and shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles, or similar tax,

mortgage tax, stamp act, or real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment. The appropriate state or local government officials or agents shall be, and hereby are, directed to forego the collection of any such tax or assessment, whether imposed upon the Debtor, Reorganized Debtor, or a buyer of the Property, and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment. Any subsequent transfer of the Property made by the Reorganized Debtor within two (2) years after the Effective Date shall be deemed a transfer by the Debtor for the purposes of this Article of this Plan and shall enjoy the same exemption from taxation as otherwise provided by § 1146(a) of the Bankruptcy Code.

Modification of Plan.  The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan at any time prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Debtor (and after the Effective Date, the Reorganized Debtor) may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with § 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan. A holder of an Allowed Claim or Interest that is deemed to have accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

Withdrawal or Revocation.  The Debtor may withdraw or revoke the Plan at any time prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or

release of any Claim by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

      <u>Courts of Competent Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

      <u>Notices</u>.  Any notices to or requests of the Reorganized Debtor by parties-in-interest under or in connection with the Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage pre-paid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

        <u>The Reorganized Debtor</u>:

        William Lansing
        1101 Connecticut Ave NW, Suite 450
        Washington, DC 20036


        With a copy to:

        Brent C. Strickland, Esq.
        Whiteford, Taylor & Preston, LLP
        111 Rockville Pike, Suite 800
        Rockville, Maryland 20850

        <u>The U.S. Trustee</u>:

        Office of the United States Trustee
        115 South Union Street, Plaza Level, Suite 210
        Alexandria, VA  22314

Severability.   In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtor, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Governing Law.   Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the District of Columbia, without giving effect to the principles of conflicts of law thereof.

Other Documents.   On or before ten (10) calendar days preceding the commencement of the hearing on the Confirmation of the Plan, unless the Bankruptcy Court orders otherwise, the Debtor and/or any party-in-interest shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Withdrawal by Proponent.   The Debtor reserves the right to withdraw the Plan at any time prior to the entry of the Confirmation Order.

Exculpation.   None of the Debtor, the Reorganized Debtor, or any of their respective members, officers, directors, employees, attorneys, agents, or Representatives shall have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtor, the Reorganized Debtor, and each of their respective members, officers, directors, employees, advisors, professionals, and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Injunction against Interference with Plan.   Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties-in-interest, along with their respective present or former affiliates, employees, agents, professionals, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

## VI.   LIQUIDATION ANALYSIS UNDER CHAPTER 7

The Plan proposes to pay all creditors in full. Creditors will thus receive an amount equal or greater than what they would receive in a chapter 7 liquidation.  In a chapter 7 liquidation, Property would be sold with far less marketing and with another layer of expense. Any reduction in the purchase price, together with chapter 7 trustee commissions and related costs, would diminish the prospects that creditors will be paid in full.

## VII.   AVOIDANCE ACTIONS

Because the Plan will pay all creditors in full, the Debtor has determined that pursuing the Avoidance Actions will not be appropriate or necessary and there are none to pursue.

## VIII.  <u>TAX CONSEQUENCES TO CREDITORS</u>

THE DISCUSSION OF FEDERAL INCOME TAX CONSEQUENCES SET FORTH BELOW IS LIMITED TO THE GENERAL TAX CONSEQUENCES AFFECTING CREDITORS AS A RESULT OF THE DISCHARGE OF INDEBTEDNESS WITHOUT PAYMENT UNDER THE PLAN. EACH CREDITOR OR INTEREST HOLDER SHOULD CONSULT THEIR OWN TAX ADVISOR TO DETERMINE THAT THE TREATMENT AFFORDED THEIR RESPECTIVE CLAIMS OR INTERESTS BY THE PLAN UNDER FEDERAL TAX LAW, THE TAX LAWS OF THE VARIOUS STATES AND LOCAL JURISDICTIONS OF THE UNITED STATES, AND THE LAWS OF FOREIGN JURISDICTIONS.

BECAUSE OF CONTINUAL CHANGES BY THE CONGRESS, THE TREASURY DEPARTMENT, AND THE COURTS WITH RESPECT TO THE ADMINISTRATION AND INTERPRETATION OF THE TAX LAWS, NO ASSURANCE CAN BE GIVEN THAT THE FOLLOWING INTERPRETATIONS WILL NOT BE CHALLENGED BY THE INTERNAL REVENUE SERVICE, OR, IF CHALLENGED, THAT SUCH INTERPRETATIONS WILL BE SUSTAINED.

NO STATEMENT IN THIS DISCLOSURE STATEMENT SHOULD BE CONSTRUED AS LEGAL OR TAX ADVICE. THE DEBTOR AND ITS COUNSEL DO NOT ASSUME ANY RESPONSIBILITY OR LIABILITY FOR THE TAX CONSEQUENCES OF A CREDITOR WHICH MAY OCCUR AS A RESULT OF THE TREATMENT AFFORDED THEIR CLAIM OR INTEREST UNDER THE PLAN.

## IX.    VOTING ON THE PLAN AND ACCEPTANCE

In order for the Plan to be accepted under the Bankruptcy Code, the Plan has to be accepted by each class of creditors and interest holders whose rights are impaired under the Plan. Because there are no impaired classes under the terms of the Plan, each class of creditors is deemed to have accepted the Plan. *See* 11 U.S.C. 1129(a)(8).

## X.    RISK FACTORS

The Debtor's Plan, as does virtually any plan, contains certain risk factors. However, to the extent possible, the risk to unsecured creditors has been greatly reduced.

The Debtor may modify the Plan at any time prior to the Confirmation Date, but may not modify the Plan so that the Plan as modified fails to meet the requirements of §§ 1122 and 1123 of the Bankruptcy Code.

After the Confirmation Date or in the Confirmation Order, the Debtor, with the approval of the Bankruptcy Court, and subject to the restrictions set forth in § 1127 of the Bankruptcy Code, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or amend the Plan in such a manner as may be necessary to carry out the purposes and effect of the Plan. The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if confirmation does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall (a) constitute a waiver or release of any claims by or against the Debtor or (b) prejudice in any manner the rights of the Debtor.

[Signatures on Next Page]

Dated:  January 22, 2024

Respectfully Submitted by,

5703 9th, LLC
Debtor and Debtor-in-Possession

By 5703 Manager, LLC

By:  */s/ William Lansing*
Name:  William Lansing
Its:  Manager

*/s/ Brent C. Strickland*
WHITEFORD, TAYLOR & PRESTON L.L.P.
Brent C. Strickland, Bar No. 452880
111 Rockville Pike, Suite 800
Rockville, Maryland 20850
Phone: (410) 347-9402
Fax: (410) 223-4302
Email:  bstrickland@whitefordlaw.com